PEOPLE *v.* GOULD.

1. STATUTES—CONSTRUCTION OF STATUTE—CRIMINAL LAW—COUNTY ENGINEER—HIGHWAYS—FRAUD OR EMBEZZLEMENT.

A county engineer for the road commission, who defrauded the county by filing false estimates of work done and material furnished, is punishable under 3 Comp. Laws 1915, § 15308, providing for the punishment of "any officer, clerk or other person employed in the treasury of the State or in the treasury of any county, or in any other public office," who shall commit any fraud or embezzlement there-

---

[1] Embezzlement, 20 C. J. § 46; Statutes, 36 Cyc. pp. 1119, 1121.

in; said officer not being excluded under the doctrine of *ejusdem generis* in construing said statute.

2. SAME—LEGISLATIVE INTENT CONTROLLING TEST.

The controlling test as to the meaning of a statutory provision is always the legislative intent, when fairly ascertainable.

3. SAME—SUBSEQUENT LEGISLATION CORRECTING DEFECTS LIBERALLY CONSTRUED.

When omissions, defects, or imperfections in a previously existing law have been supplied or corrected in subsequent legislation, they should be liberally construed for the advancement of the remedy and suppression of the mischief against which they are directed.

4. INDICTMENT AND INFORMATION—PURPOSE OF INFORMATION.

The primary purpose of an information is to plainly advise an accused of the offense with which he is charged.

5. SAME—INFORMATION STATING CHARGE WITH EXACTNESS AND IN DETAIL NOT DEFECTIVE BECAUSE OMITTING WORD "KNOWINGLY"—SCIENTER.

An information charging a county engineer for the road commission with fraudulently making and filing false estimates of work done and material furnished, in violation of 3 Comp. Laws 1915, § 15308, which is not obscure or misleading, but states with exactness and in detail just what defendant is accused of having done, is not fatally defective because of failure to include in it the word "knowingly" or to allege a *scienter*.

6. SAME—"SCIENTER" DEFINED—WORDS AND PHRASES.

*"Scienter"* is merely an expressive word retained from the old Latin forms of pleading, signifying, in the connection commonly used, that the alleged crime or tort was done designedly, understandingly, or with guilty knowledge.

Error to Lapeer; Sample (George W.), J., presiding. Submitted October 14, 1926. (Docket No. 120.) Decided December 8, 1926.

Edgar H. Gould was convicted of making fraudulent estimates, and sentenced to imprisonment for not less

²Statutes, 36 Cyc. p. 1106; ³Id., 36 Cyc. p. 1165; ⁴Indictment and Information, 31 C. J. § 180; ⁵Embezzlement, 20 C. J. § 70; ⁶Scienter, 35 Cyc. p. 1144.

than 7 nor more than 14 years in the State prison at Jackson.    Affirmed.

*Roy E. Brownell* and *George W. Des Jardins,* for appellant.

*Andrew B. Dougherty,* Attorney General, *Glenn L. Hollenbeck,* Prosecuting Attorney, and *Elmer Shumar,* Assistant Prosecuting Attorney, for the people.

STEERE, J.   On September 26, 1925, and for a considerable period prior thereto, defendant, Edgar H. Gould, was county engineer for the road commission of Lapeer county.    Among his official duties he was required as such engineer to make and file with the road commission certified written estimates showing the amount and value of work and material performed and furnished by contractors working upon roads in said county, as a basis for orders on the road funds of the county which it was the duty of the commission to issue.

On September 26, 1925, complaint was made before a magistrate charging defendant with fraudulently making and filing with the commission false estimates of work done and material furnished, and value of the same, in various specified instances amounting to many thousands of dollars; relying upon which, as reported to the commission, excessive payments were made to contractors, resulting in cheating and defrauding the county of Lapeer and its taxpayers out of large sums of money.    Warrant was issued upon said complaint and defendant arrested.    Examination was had before the magistrate who found probable cause to believe defendant guilty as charged and bound him over for trial in the circuit court.    Information was then filed against him and on arraignment he stood mute. A plea of not guilty was entered in his behalf by order of the court.    His trial by jury resulted in a verdict of guilty.    He was sentenced to the State prison at

Jackson for a term of years, but subsequently admitted to bail pending this appeal.

From inception of the case all questions sought to be reviewed were timely raised and saved by proper motions, objections and exceptions.

The charge as laid in the information is based upon section 15308, 3 Comp. Laws 1915, which provides as follows:

"SECTION 27. If any officer, clerk or other person, employed in the treasury of this State, or in the treasury of any county, or in any other public office within this State, shall commit any fraud or embezzlement therein, he shall be punished by imprisonment in the State prison, not more than fourteen years, or by fine not exceeding two thousand dollars, or imprisonment in the county jail not more than two years, or both, at the discretion of the court."

As presented here for review, but two assignments of error are urged and argued by counsel for defendant. They are as follows:

"(*a*) That applying the doctrine of *ejusdem generis* to section 15308, Compiled Laws of 1915, a county engineer is not included within the meaning of the statute.

"(*b*) The failure of the information to include the word 'knowingly' and to allege a *scienter* renders the information fatally defective."

In support of the contention that a county engineer is not included within the meaning of the statute, defendant's counsel rely upon the familiar rule of construction (called *ejusdem generis*) that when general words follow the enumeration of particular persons or things those general words are to be construed as applicable only to the same kind as those specifically enumerated, citing 2 Lewis' Sutherland Statutory Construction (2d Ed.), p. 814 *et seq.* Following a discussion of that rule, it is said on p. 832, under the subtitle "Qualifications and exceptions to the rule of *ejusdem generis*," in part as follows:

"This rule can be used only as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention or of confining the operation of a statute within narrower limits than was intended by the law-maker. It affords a mere suggestion to the judicial mind that where it clearly appears that the law-maker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class. The suggestion is one of common sense. Other rules of construction are equally potent, especially the primary rule which suggests that the intent of the legislature is to be found in the ordinary meaning of the words of the statute. The sense in which general words, or any words, are intended to be used furnishes the rule of interpretation, and this is to be collected from the context; and a narrower or more extended meaning will be given, according as the intention is thus indicated. * * * These principles of construction and apparent exception to the maxim of *ejusdem generis* apply as well to criminal statutes as to others."

The statutory provision under consideration in the instant case (§ 15308) has remained in its present form on our statute books for more than three-quarters of a century. We are cited to and find but three cases brought directly under this statute which have been before this court.

In *People* v. *McKinney*, 10 Mich. 54, Justice CHRISTIANCY gave it careful consideration and pointed out that it was copied in substance from the Massachusetts statute and its origin in this State is found in our Revised Statutes of 1838, p. 630. As then enacted it reads:

"SECTION 26. If any clerk or other person, employed in the treasury of this State, shall commit any fraud or embezzlement therein, he shall be punished by fine not exceeding two thousand dollars, or by imprisonment in the State prison for life, or for such term of years as the court shall order."

It is further noted that amendments and changes

were made in the laws bearing upon this section in 1839 and 1840, somewhat enlarging its scope, apparently because the legislature was not satisfied with its limitations, of which the court said:

"Thus stood the law until the revision of 1846.  This revision consisted mainly of a revision and consolidation of then existing laws.  We have seen that the section now in question, in its original form in the revision of 1838, was, 'if any clerk or other person employed in the treasury of this State;' the law of 1839 applied to 'every public officer of this State who shall receive or be intrusted with the money or funds of the State, to be kept or disbursed for or on account of the State.'  In the revision of 1846, this section does not appear as an independent provision, nor does the original section cited from the revision of 1838 appear in its original form; but, in its place, we find the section in a new and amended form, the word 'officer' for the first time appearing before the word 'clerk,' and the whole provision extended to 'any officer, clerk or other person employed in the treasury of any county or in any other public office within this State.'  We think this furnishes a strong and satisfactory inference of an intention to combine, in this section, substantially the effect of the original section in the revision of 1838, and the amendment by the act of 1839, so far at least as to the persons intended to be included in its provisions."

*People* v. *Smith*, 25 Mich. 497, was a prosecution under this statute, where conviction was set aside on the ground that the accused neither had nor waived the preliminary examination before the committing magistrate.  No other question was discussed.

In the comparatively recent case of *People* v. *Willson*, 205 Mich. 28, the supervisor of a township was charged under this section with having falsely and fraudulently reported a false tax valuation of his township to the board of supervisors at their annual session for equalization and apportionment of taxes, with intent to cheat and defraud the rest of the county and taxpayers

therein. He was represented by able counsel and the case was strenuously litigated, but no claim was made that he was not included in the words "or any other public office within this State." Defendant's counsel cite *McDade* v. *People*, 29 Mich. 50, as a "leading case" in this State on the rule of *ejusdem generis*, and urge language quoted from it as in principle controlling here. In that case respondent was charged with feloniously setting fire to and burning a warehouse under a statute providing that "Every person who shall set fire to any building mentioned in the preceding sections, or to any other material, with intent to cause any such building to be burnt, or shall by any other means attempt to cause any building to be burnt, shall be punished," etc. There the controlling opinion found the proofs failed to show any overt physical act of respondent in setting the fire and applied the rule of *ejusdem generis* to his claimed indirect connection with it.

In the later case of *People* v. *Gogak*, 205 Mich. 260, the accused was convicted under a statute making it a penal offense to carry various concealed weapons "or other offensive and dangerous weapons or instruments concealed upon his person." The statute did not name the weapon he was convicted of carrying and the rule of *ejusdem generis* was urged in his defense. In confirming the conviction this court said, speaking through Justice STONE:

"We think the rule applicable here is that stated by this court in *McDade* v. *People*, 29 Mich. 50, where Chief Justice GRAVES said:

"'It is a well-settled general rule, and one especially applicable in the interpretation of statutes which define crimes and regulate their punishment, that general words are to be restrained to the matter with which the act is dealing, and that if it be dealing with specific things or particular modes only, the general words must be limited to such things or modes, *except when it is apparent that the legislature intended by the general words to go further;*' citing cases.

"We think it clearly appears that the legislature here intended to go further than the specific things that are mentioned in the statute, and meant to embrace all 'other offensive and dangerous weapons or instruments concealed upon his person.'"

The controlling test is always the legislative intent when fairly ascertainable. We are persuaded that the legislative history of this statutory provision, its manifest purpose, and the plain concluding words used as ordinarily understood, clearly shows that the legislature intended to go further than those specifically enumerated and include all persons of the class naturally and reasonably falling within the scope and spirit of the act.

It is shown that the subject-matter of this section was under consideration by the legislature more than once and finally formulated in 1846 as it has since remained. It is an old and well recognized rule that, when omissions, defects, or imperfections in a previously existing law have been supplied or corrected in subsequent legislation, they should be liberally construed for the advancement of the remedy, and suppression of the mischief against which they are directed. This legislation is but a reasonable and natural classification of the officers and agents of this State and its subordinate legal entities who are engaged in public service, applicable alike to each member of that class, and in its inception not so constituted as to preclude addition to the number originally included within a class, so long as the attribute of equality of operation is maintained.

It is further objected that the information under which defendant was convicted is fatally defective because of failure to include in it the word "knowingly" or to allege a *scienter*. We find no occasion to discuss the technical aspect of that question at length. This act does not, as sometimes found, specifically use the word "knowingly," calling for an affirmative allega-

tion! *in hæc verba.*    The primary purpose of an information is to plainly advise an accused of the offense with which he is charged.    This information is neither obscure nor misleading.    It states with exactness and in detail just what he is accused of having done.    Its allegations negative any possible hypothesis of ignorance.    *Scienter* is not a word of mystery, or magic meaning.    It is merely an expressive word retained from the old Latin forms of pleading signifying in the connection commonly used that the alleged crime or tort was done designedly, understandingly, knowingly, or with guilty knowledge.    If necessary to affirmatively negative the supposition of ignorant innocence under the facts alleged in this information, *scienter* is plainly apparent.    It states a course of conduct on the part of defendant in his official employment as county road engineer from which no possible inference of innocence can be drawn, and repeatedly states that he did the things alleged "falsely and fraudulently," that they were done "with intent to cheat and defraud the county of Lapeer and the taxpayers thereof * * * and did then and there by means of the false reports and representations cheat and defraud the said county of Lapeer and the taxpayers thereof of a large amount of money, to wit:" * * *

We are of opinion the errors assigned and urged are not tenable.    The judgment of the trial court is therefore affirmed.

BIRD, C. J., and SHARPE, SNOW, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.