PEOPLE *v.* OWENS.

OPINION OF THE COURT.

1. STATUTES—CONSTRUCTION—CONSIDERATION IN PARI MATERIA.

A statute making it a misdemeanor to encourage or contribute toward a minor child becoming neglected or delinquent or coming under the jurisdiction of the juvenile division of the probate court must be construed as being *in pari materia* with a statute defining the jurisdiction of the juvenile division of the probate court (CL 1948, §§ 712A.2 as amended, 750.145).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 9, 11] 50 Am Jur, Statute § 348 *et seq.*
[2, 14, 17–19] 31 Am Jur, Juvenile Courts and Delinquent, Dependent, and Neglected Children § 92 *et seq.*
[3, 15] 31 Am Jur, Juvenile Courts and Delinquent, Dependent, and Neglected Children §§ 95, 98.
[4] 31 Am Jur, Juvenile Courts and Delinquent, Dependent, and Neglected Children §§ 97, 100.
[5] 5 Am Jur 2d, Appeal and Error § 599.
[6] 50 Am Jur, Statutes § 235.
[7] 31 Am Jur, Juvenile Courts and Delinquent, Dependent, and Neglected Children § 96.
[8, 16] 41 Am Jur 2d, Indictments and Informations §§ 8, 9.
[10] 31 Am Jur, Juvenile Courts and Delinquent, Dependent, and Neglected Children § 101.
[12, 13] 5 Am Jur 2d, Appeal and Error § 839.

2. CRIMINAL LAW—DUE PROCESS—VAGUENESS—CONTRIBUTING TO DELINQUENCY OF A MINOR—JURISDICTION OF PROBATE COURT.

Statute making it a misdemeanor to encourage or contribute to a minor child becoming neglected or delinquent or coming under the jurisdiction of the juvenile division of the probate court *held*, not so vague or indefinite as to deny defendant the right to be informed of the standard of conduct required of him to conform when the statute defining the jurisdiction of the juvenile division of probate court in its amended form is considered (CL 1948, §§ 712A.2 as amended, 750.145).

3. SAME—CONTRIBUTING TO DELINQUENCY OF A MINOR.

Act of defendant in obtaining a motel room for a girl who had run away from home cannot be said to be the act of a "good Samaritan" and thus he was contributing to the delinquency of a minor when defendant told the girl before she ran away that he would help her and this contributed to her decision to leave home (CL 1948, §§ 712A.2 as amended, 750.145).

4. PLEADING—COMPLAINT—INSTRUCTIONS TO JURY—SUGGESTED FORMS—FORMBOOKS—TREATISES.

Suggested forms for complaints and jury instructions that are contained in a treatise are merely illustrative and are not binding on a court as reflective of the law on a particular issue.

5. CRIMINAL LAW — COMPLAINT — APPEAL AND ERROR — PRESERVING QUESTION.

Objections to a criminal complaint not raised at trial and not passed upon by the trial court will not be considered on appeal.

6. STATUTES—CONSTRUCTION—MEANING OF WORDS.

Words found in a statute are given their usual and customary meaning in the context of the entire statute.

7. CRIMINAL LAW—CONTRIBUTING TO DELINQUENCY OF A MINOR—ADJUDICATION OF DELINQUENCY.

Prior adjudication that a minor was delinquent is not necessary to a conviction for contributing to the delinquency of a minor, where the statute also forbids actions *tending* to cause a minor to come within the jurisdiction of the juvenile division of a probate court (CL 1948, §§ 712A.2 as amended, 750.145).

DISSENTING OPINION.

LEVIN, J.

8. CRIMINAL LAW—DUE PROCESS—SPECIFIC OFFENSE CHARGED.

*The right to be apprised with specificity of the accusation charged is a fundamental element of due process of law.*

9. SAME—CONTRIBUTING TO THE DELINQUENCY OF A MINOR—DUE PROCESS—SPECIFIC OFFENSE CHARGED.

*A person accused of contributing to the delinquency of a minor is entitled to know exactly what the nature of his wrongdoing is alleged to be (CL 1948, §§ 712A.2 as amended, 750.145).*

10. SAME — CONTRIBUTING TO THE DELINQUENCY OF A MINOR — DUE PROCESS—SPECIFIC OFFENSE CHARGED—CRIME NOT CHARGED.

*Conviction on a charge of harboring a minor while she was missing from home on the basis of a finding that defendant encouraged a minor child to desert her home without sufficient cause denies defendant due process because he is being convicted of a crime different from the one charged (CL 1948, §§ 712A.2 as amended, 750.145).*

11. SAME — APPEAL AND ERROR — DUE PROCESS — GROUNDS NOT CHARGED IN INFORMATION.

*It is a denial of due process for a State appellate court to affirm a criminal conviction on grounds not charged in the information and not passed upon at trial.*

12. SAME—APPEAL AND ERROR—FINDINGS OF FACT—FINDINGS NOT MADE BY TRIAL COURT.

*It is not the function of an appellate court to find facts the trier of fact did not find in order to buttress a conviction of crime by the lower court.*

13. SAME—NONJURY TRIAL—FINDINGS OF FACT—APPEAL AND ERROR.

*The importance of requiring specific findings of fact of a judge sitting without a jury is just as great in criminal cases as in civil cases (GCR 1963, 517.1).*

14. SAME—CONTRIBUTING TO THE DELINQUENCY OF A MINOR—STATUTE.

*Every act that might possibly be thought to further delinquency is not proscribed by the statute forbidding contributing to the delinquency of a minor (CL 1948, §§ 712A.2 as amended, 750.145).*

15. SAME—CONTRIBUTING TO THE DELINQUENCY OF A MINOR—PROVIDING SHELTER.

Providing shelter to a minor while she is missing from home does not by itself contribute or tend to contribute to any act of delinquency, the proper question being whether the actions are adapted or calculated or should be expected, in the ordinary course of events, to cause a particular child to commit the alleged act of delinquency (CL 1948, §§ 712A.2 as amended, 750.145).

16. SAME—DUE PROCESS—INFORMATION—AMBIGUITY.

Any ambiguity in an information charging a crime should be resolved in defendant's favor.

17. STATUTES—CONTRIBUTING TO THE DELINQUENCY OF A MINOR—DUE PROCESS—VAGUENESS.

The portion of a statute making it a crime to contribute to a child's association with "immoral" persons, to his "immoral" life or habitual "idleness" is so vague as to be subject to discriminatory application and is therefore unconstitutional and void (CL 1948, §§ 712A.2, as amended, 750.145).

18. SAME—PROTECTION OF CHILDREN—DUE PROCESS—VAGUENESS.

It is not an answer to the argument that a statute is vague and therefore unconstitutional to say that it was adopted for the purpose of protecting children, even though the State by properly drawn legislation can proscribe for minors that which it could not proscribe for adults.

19. CRIMINAL LAW — DUE PROCESS — PROOF OF ALL ELEMENTS OF CRIME.

Due process is denied one who is convicted of a crime without proof of an essential ingredient of the crime; therefore, one cannot be convicted of encouraging a minor to leave her home without cause unless there is proof that she left home without cause (CL 1948, §§ 712A.2 as amended, 750.145).

Appeal from Recorder's Court of Detroit, Schemanske (Frank G.), J. Submitted Division 1 June 7, 1967, at Detroit. (Docket No. 1,755.) Decided September 26, 1968.

James Owens was convicted of contributing to the delinquency of a minor. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *William L. Cahalan*, Prosecuting Attorney, *Samuel J. Torina*, Chief Appellate Lawyer, and *Richard J. Padzieski*, Assistant Prosecuting Attorney, for the people.

*Myzell Sowell*, for defendant.

FITZGERALD, P. J.   Defendant-appellant was convicted in the Recorder's Court of the City of Detroit on a charge of contributing to the delinquency of a minor under CL 1948, § 750.145 (Stat Ann 1962 Rev § 28.340), and appeals his conviction by questioning the application of that law to the following facts:

On December 5, 1965, defendant came into contact with Miss Diane Koskela who informed defendant that she was 18 years of age, that she was tired of living at home with her parents, and that she wished to move to Detroit and have a musical composition which she had written heard by the Motown Recording Company.   Miss Koskela testified at the trial that defendant said if she came to Detroit, he would find her a place to stay.   Two days later, after reaching Detroit from her home in Clarkston, Miss Koskela telephoned defendant for assistance and he responded by picking her up at a bus stop and by renting a motel room in Detroit for Miss Koskela, whereupon she immediately moved into residence. No impropriety of activity was alleged to have occurred during defendant's frequent vists to the motel.

Miss Koskela was picked up at the Motown recording studio on December 11, 1965, by her father, who signed a warrant charging defendant with contributing to the delinquency and neglect of a minor

child. It was revealed at the trial that Miss Koskela was actually 16 years of age.

Defendant was convicted, and sentenced on January 12, 1966, to a term of 60 days in the Detroit House of Correction. A motion for new trial was denied on February 4, 1966, and defendant filed and was granted an order staying execution of the sentence on $1,500 bail, pending the outcome of his appeal to this Court.

We are asked to construe the language of CL 1948, § 750.145 (Stat Ann 1962 Rev § 28.340), which follows:

"Any person who shall by any act, or by any word, encourage, contribute toward, cause or tend to cause any minor child under the age of 17 years to become neglected or delinquent so as to come or tend to come under the jurisdiction of the juvenile division of the probate court as defined in section 2 of chapter 12a of Act No 288 of the Public Acts of 1939, as added by Act No 54 of the Public Acts of the First Extra Session of 1944, and any amendments thereto, whether or not such child shall in fact be adjudicated a ward of the probate court, shall be guilty of a misdemeanor."

Defendant presents us with three questions concerning an interpretation of this statute:

1. Is the statute so vague and indefinite as not to sufficiently apprise defendant of the standard of conduct expected of him and the nature of the charges against him?

2. Was the statute intended to cover this kind of situation?

3. Must the minor child be first adjudged a delinquent before the court may determine guilt in this kind of situation?

In support of the first issue, alleging that the statute is vague and indefinite, defendant would have

us look to note 11 following Stat Ann 1962 Rev
§ 28.340, where it is stated that:

"This section, as amended in 1939, is ineffective,
since all statutes in which 'neglect' or 'delinquency'
of minor children is defined have been repealed.  Op
Atty Gen Dec. 6, 1944, No. 0–2917."

The people cite the case of *Dearborn Township
Clerk* v. *Jones* (1953), 335 Mich 658, to this Court
for the proposition that a penal statute (such as
CL 1948, § 750.145) and a juvenile jurisdiction stat-
ute referred to in that statute (such as § 2 of chapter
12a of PA 1939, No 288 as added by PA 1944 [1st
Ex Sess], No 54), must be construed together, as
one statute, as being *in pari materia* on the same
general subject matter in order to reflect the intent
of the legislature.  *People* v. *Gould* (1926), 237 Mich
156.

Thus, it appears that the history of CL 1948,
§ 750.145 (Stat Ann 1962 Rev § 28.340), adds PA
1945, No 85, to any consideration of the statute.
The 1939 statute was vague and indefinite in that
it required "neglect" and "delinquency" to be de-
fined by the statutes of the state.  The 1944 opinion
of the attorney general is based on this 1939 lan-
guage.  However, the vagueness was removed by PA
1945, No 85, which changed the language of CL
1948, § 750.145 (Stat Ann 1962 Rev § 28.340), to its
present form and refers one to the juvenile juris-
diction statute (PA 1939, No 288, § 2 of chapter 12a
as added by PA 1944 [1st Ex Sess], No 54 and
any amendments thereto) which must be considered
*in paria materia* with CL 1948, § 750.145 (Stat Ann
1962 Rev § 28.340).  The relevant section of CL 1948,
§ 712A.2, as amended by PA 1965, No 182 (Stat Ann
1968 Cum Supp § 27.3178 [598.2]), reads as fol-
lows:

"Except as provided herein, the juvenile division of the probate court shall have:

"a) Exclusive original jurisdiction superior to and regardless of the jurisdiction of any other court in proceedings concerning any child under 17 years of age found within the county  *  *  *

"2) who has deserted his home without sufficient cause or who is repeatedly disobedient to the reasonable and lawful commands of his parents, guardian or other custodian."

It is the intent of the legislature that these sections, including the above language, of CL 1948, § 712A.2 as amended (Stat Ann 1968 Cum Supp § 27.3178 [598.2]), are to define the situations under which the probate court may take jurisdiction of children under the age of 17 years. When read together with CL 1948, § 750.145 (Stat Ann 1962 Rev § 28.340), it is apparent that the purpose of the legislature in retaining this statute is to prohibit other people from contributing to the child's coming within the application of CL 1948, § 712A.2, as amended by PA 1965, No 182 (Stat Ann 1968 Cum Supp § 27.3178 [598.2]).

We do not find that this section is so vague or indefinite as to deny defendant the constitutional right to be informed of the standard of conduct required of him and to be apprised of the charges against him. Defendant has relied solely on the language of note 11, and the opinion of the attorney general mentioned therein, without noting that several amendments and revisions of the law have occurred since the issuance of that opinion to correct the problems found in the 1939 statute, and to remove the objection of vagueness.

Defendant's second contention is that CL 1948, § 750.145 (Stat Ann 1962 Rev § 28.340), was not intended to cover a situation such as this because

defendant was acting as a "good Samaritan" in providing Miss Koskela with lodging when she was a runaway girl exposed to the "unsavory elements in the community" and that the statute is not intended to punish "good Samaritans". While the latter may be true, we fail to discover any evidence from the record that the defendant acted as a "good Samaritan" and in effect this allegation is made first on appeal to this Court. The girl was encouraged by defendant's offer of assistance to *leave* her home in Clarkston and take up lodging in Detroit in a motel room paid for by defendant. These encouragements would appear very attractive to a girl 16 years of age, and are exactly the type of activities which CL 1948, §§ 712A.2 and 750.145 are intended to prohibit. The generosity of defendant in providing a home for runaway minor girls cannot be said to be an act of good Samaritanism when he has abetted the girl's departure from home by promises of assistance.

Defendant's third allegation to this Court is that he could not have been properly convicted of the charge without the trial court first adjudicating that Miss Koskela was a delinquent child. We are furnished with a citation to 3 Gillespie, Michigan Criminal Law and Procedure (2d ed), §§ 1197, 1198, wherein the author sets forth suggested forms for the complaint and for the instructions to the jury in a case of contributing to the delinquency and neglect of a minor, the forms suggesting the inclusion of language stating that the minor child had been first adjudged to be a delinquent child before the complaint was issued. It must be emphasized that these forms are merely illustrative and are not absolutely binding upon an appellate or trial court as reflective of the law on the issue.

We direct defendant to 1 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 184, and the

case of *People* v. *Dowd* (1880), 44 Mich 488, wherein the Court denied Dowd permission to object to the complaint and warrant under which he was arrested when he was called on to plead to an information following his examination.    Here, defendant waits even longer and first raises the question about the complaint on appeal, and therefore he cannot be heard.    See cases cited at 1 Callaghan's Michigan Digest, Appeal and Error, §§ 285, 286. We also direct defendant to 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 806:

"Objections not raised during the trial and not passed upon by the trial court, will not be considered on appeal.    A claim upon appeal made for the first time in the appellate court, which was not called to the attention of the court below, cannot be considered."

This Court has accepted the above language of the Michigan Supreme Court in the case of *People* v. *Willis* (1965), 1 Mich App 428, without qualification.    However, in order to dispose fully of defendant's allegation that he could not be convicted without Miss Koskela first being adjudged delinquent, we will briefly discuss the issue in order to dispel any future confusion which may result in the interpretation of CL 1948, § 750.145 (Stat Ann 1962 Rev § 28.340).    For clarification purposes, the specific language to be considered may be reiterated here as follows:

"Any person who shall by any act, or by any word encourage, contribute toward, cause or *tend to cause* any minor child under the age of 17 years to become neglected or delinquent so as to come or *tend to come* under the jurisdiction of the juvenile division of the probate court whether or not such child shall in fact be adjudged a ward of the probate court." (Emphasis supplied.)

The people suggest that the language "tend to cause" and "tend to come" was added by the legislature with the intent that a person who could, by his actions, lead or direct a minor child into delinquency, would be in violation of the statute, although the child had not been adjudged delinquent by the probate court prior to conviction of the person for his actions.

We give words found in a statute their usual and customary meaning in the context of the entire statute, *Sanchick* v. *Michigan Board of Examiners in Optometry* (1955), 342 Mich 555. We will accept the definition of the word "tend" to be found in Black's Law Dictionary (4th ed), p 1637:

"Tend. To have a leaning; serve, contribute, or conduce in some degree or way, or have a *more or less direct bearing* or effect; to be *directed* as to any end, object, or purpose; to have a *tendency,* conscious or unconscious to any end, object or purpose." (Emphasis supplied.)

Defendant was actually convicted on the criminal offense of tending to cause Miss Koskela to tend to come under the jurisdiction of the juvenile court. We believe that the actions of defendant did serve, contribute, and direct Miss Koskela toward delinquency although she had not yet been adjudged delinquent by the probate court prior to defendant's trial. Additional reference should be made to the language "whether or not such child shall in fact be adjudged a ward of the probate court". By reading all sections of the relevant statute together, it is apparent that the legislature meant to prevent conduct which would *tend to cause* delinquency and neglect as well as that conduct which obviously *has caused* delinquency and neglect. Thus, we hold that prior adjudication of delinquency by the juvenile court is not a prerequisite to defendant's conviction.

The decision of the Recorder's Court of the City of Detroit in finding defendant guilty of contributing to the delinquency and neglect of a minor pursuant to CL 1948, § 712A.2 as amended (Stat Ann 1968 Cum Supp § 27.3178[598.2]), and CL 1948, § 750.145 (Stat Ann 1962 Rev § 28.340), is affirmed.

McGREGOR, J., concurred with FITZGERALD, P. J.

LEVIN, J. (*dissenting*). The complaint charged the defendant James M. Owens by act, or by word, encouraged and contributed toward, caused or tended to cause a child under the age of 17, Diane Koskela, to become neglected or delinquent so as to come, or tend to come, under the jurisdiction of the juvenile division of the probate court in that the defendant "did then and there *harbor* the said Diane Koskela *while* she was missing from home" in violation of CL 1948, § 750.145 (Stat Ann 1962 Rev § 28.340). (Emphasis supplied.) The case was tried without a jury. The judge found the defendant guilty, stating:

"She is sixteen years of age. He paid her rent and kept her at the motel."

I.

The majority affirms the defendant's conviction because their view of the evidence would support a conviction for encouraging or causing a child "*to desert her home* without sufficient cause." If Diane "deserted her home without sufficient cause," that was an act of delinquency.[1] But the defendant was not *charged* with encouraging or contributing to that act. The actions of the defendant *complained of*

---

[1] As explained in the majority opinion, the Michigan penal code provision (CL 1948, § 750.145 [Stat Ann 1962 Rev § 28.340]) refers to the probate code (CL 1948, § 712A.2 as amended [Stat Ann 1968 Cum Supp § 27.3178(598.2)]) for the definitions of the misdeeds, commission of which constitutes juvenile delinquency.

occurred after Diane left home. He was charged with harboring Diane *"while* she was missing from home."

Our Court recently observed:

"The right to be apprised with specificity of the accusation charged is indeed a fundamental element of due process; this right is repeated in the Michigan Constitution and the statutes of our State, and is guarded with vigilance by its appellate courts." *People* v. *Anderson* (1967), 8 Mich App 110, 114.

We cannot discard as mere surplusage the statement in the complaint and warrant charging the defendant with "harboring" Diane *while* she was away from home.[2] The statute defining the crime of contributing to the delinquency of a minor is of great length.[3] One charged with that crime is entitled to know whether the basis of the charge is that he encouraged the child:

to violate a municipal ordinance or law;

to desert his home without sufficient cause;

to be repeatedly disobedient to the reasonable and lawful commands of his parent, guardian, or other custodian;

to repeatedly associate with immoral persons or to lead an immoral life or to be found on premises occupied or used for illegal purposes;

to willfully and repeatedly absent himself from school or to repeatedly violate rules and regulations thereof;

to habitually idle away his time;

to repeatedly patronize or frequent taverns (CL 1948, § 712A.2 as amended by PA 1965, No 182 [Stat Ann 1968 Cum Supp § 27.3178 (598.2)]);

or whether it is claimed that some other provision of the relevant statute is applicable.

---

[2] See CL 1948, § 767.47 (Stat Ann 1954 Rev § 28.987). Where a misdemeanor is charged, the complaint and warrant function as an information.

[3] See footnote 1.

Whatever may be the appropriate consequence for failure to demand, before conviction, complete clarification and specificity of a charge,[4] where the statute's multifarious language requires clarification and a specific charge is alleged—harboring Diane *"while* she was missing from home"—the people are bound by whatever definitiveness appears in the charge and may not proceed as if the limiting averments of the charge are mere surplusage. Convicting the defendant of a crime other than the crime with which he was charged denies him due process of law. *DeJonge* v. *Oregon* (1937), 299 US 353, 362 (57 S Ct 255, 81 L Ed 278).[5]

## II.

Even if there is sufficient evidence in the record to support a conviction for *encouraging* Diane to desert her home, the defendant's conviction cannot be sustained on appeal on that ground. In *Cole* v. *Arkansas* (1948), 333 US 196 (68 S Ct 514, 92 L Ed 644), the United States Supreme Court held it was a denial of due process for a State appellate court to affirm a criminal conviction on grounds not charged in the information and not passed upon at trial. In language apposite under both parts I and II of this opinion, the Court declared (p 201):

"It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made."[6]

---

[4] Compare *People* v. *Frencavage* (1925), 231 Mich 242, 244, with CL 1948, § 767.76 (Stat Ann 1954 Rev § 28.1016). See, also, 1 Gillespie, Michigan Crim Law & Prac (2d ed), § 184.

[5] Compare *In re Ruffalo* (1968), 390 US 544 (88 S Ct 1222, 20 L Ed 2d 117), disallowing, in disbarment proceedings, adding of a new charge on the basis of the charged lawyer's own testimony.

[6] Similarly see *People* v. *Frencavage, supra,* p 245, holding that conviction may not be affirmed on a theory different from that adopted by the trial judge.

Not only was the defendant not charged with encouraging Diane to desert her home, but the trial judge did not find him guilty of encouraging Diane to *desert* her home.  He found that the defendant paid her rent and kept her at the motel.  That is to say, he "harbored" her at the motel "while" she was away from home as charged.  The record evidence does not necessarily require a conclusion by the trier that the defendant encouraged her to *leave* home.  It is beyond our function to find facts the trier did not find to buttress the conviction below.[7]

---

[7] In nonjury cases the importance of requiring specific findings of fact to evoke the trial judge's care in ascertaining the facts, to make clear just what was decided, and as an aid to appellate review, is now so universally acknowledged that virtually every jurisdiction requires fact-finding by the trial judge in civil cases tried by a judge.  53 Am Jur, Trial, § 1133, p 787; 2B Barron & Holtzoff, Federal Practice and Procedure, § 1121, pp 479–482.

The same need for fact-finding exists in a criminal case tried by a judge without a jury.  If judges were not at times mistaken as to the law, no trial judge would ever be reversed for misdirection of a jury, and there would be no need for further review from our Court by the Supreme Court.  Judges are sometimes mistaken as to the law, or at least differ as to the law.  In a sense, findings of fact in a nonjury criminal case serve a function paralleling the judge's charge in a jury case, that of revealing the law applied by the fact finder.  While there probably is less need for fact-finding where the accused is charged with a so-called common-law crime, there is great need for fact-finding where the alleged crime is defined in two loosely drawn provisions, one in the probate code and the other in the penal code.

In *People* v. *Beaudoin* (1967), 7 Mich App 461, our Court held GCR 1963, 517.1's requirement that the trial judge make findings of fact applies to criminal as well as civil trials.

While fact-finding in criminal cases is relatively new, it is not unknown.  Rule 23(c) of the federal rules of criminal procedure provides for such fact-finding when it is requested by either party. New Jersey (RR 3:7–1[c]) and Delaware (rule 23[c] rules of criminal procedure of the superior court, Del C Ann) have adopted verbatim F R Cr P 23(c).

In *State* v. *Frost* (1926), 105 Conn 326 (135 A 446), the court, independently of statute or rule, held it essential that the trial court in a nonjury criminal case find and state both the subordinate facts and the ultimate fact.  In *City of Seattle* v. *Silverman* (1950), 35 Wash 2d 574 (214 P2d 180, 182), the court reaffirmed prior holdings that "under § 367 Rem Comp Stat (Rem Rev Stat, § 367), in a criminal case tried to the court without a jury, findings of fact should be made as in civil cases"; the statutory requirement referred to (now RCW 4.44.050), in language not unlike Michigan's court rule, provides: "Upon the trial of an issue of fact by the court

## III.

While the penal code does not require the people to prove that the accused intended[8] to. bring about a child's delinquency, every act which might be thought to further delinquency is not proscribed by the statute.

Had Diane Koskela gone to the YWCA and rented a room, no one would suggest that institution had contributed to her delinquency by renting her a room. Nor would that conclusion be different if it were established she told the YWCA before renting a room that she had run away from home.[9] The statute does not proscribe furnishing shelter or food to a runaway. It does not make it a crime to do so, even though such action sustains the runaway delinquent.

In *State* v. *Crary* (Common Pleas, Juv Div, 1959), 10 Ohio Op 2d 36 (155 NE2d 262), the defendant drug store proprietor was alleged to have "unlawfully acted in a way tending to cause the delinquency" of a 14-year-old boy by selling him a lewd magazine. The court acquitted the defendant because of insufficient connection between the magazine sale and the boy's possible delinquency. In do-

---

\* \* \* the facts found and the conclusions of law shall be separately stated."

See, also, *Specht* v. *Patterson* (1967), 386 US 605, 610 (87 S Ct 1209, 18 L Ed 2d 326), where the court observed: "Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. *And there must be findings adequate to make meaningful any appeal that is allowed."* (Emphasis supplied.)

[8] See Final Draft of Proposed Michigan Revised Criminal Code (1967), § 7040(1)(b) for a proposal which would require proof that defendant acted "knowingly or with criminal negligence."

[9] Guilty knowledge or criminal intent is not necessarily an element of a crime *malum prohibitum.* Defendant does not assert it is an element of contributing to the delinquency of a minor and does not claim he is protected by Diane's testimony she told him she was 18.

ing so, *Crary* enunciated a sensible standard (155 NE2d, p 265):

"No defendant may be deprived of life, liberty or property for doing something which might just possibly sometime, somewhere lead to some child's becoming delinquent. Possibility must give way to comparative if not absolute certainty. The delinquency which the law is trying to prevent must be fairly imminent, a reasonably certain result of the act complained of, reasonably sure to befall a certain child in a reasonable time. That seems to be the way the courts have been applying this statute. Apparently they have held that a single act or even a course of action which is merely likely or apt or liable to lead to a given child's overt act of delinquency is too remote a causative factor to warrant depriving a citizen of his liberty. Unless the causal connection be clear and a delinquent act be reasonably sure to follow, the judges refuse to be convinced beyond a reasonable doubt that the act complained of 'tends to cause' the delinquency of the child."

In the phrase "encourage, contribute toward, cause or continue to cause," the key word is "encourage." Unless that phrase is interpreted to require some element of prompting, one could be convicted on the basis of an act not calculated to bring about a child's delinquency. Providing shelter for a child "while she is missing from home", by itself, does not contribute or tend to contribute to any act of delinquency described in the statute.

Accordingly, it was not a crime to harbor Diane while she was missing from home, and the defendant's conviction of that charge should be reversed.

If this penal code phrase is interpreted to mean that a conviction may be based on *any* act that contributes to or causes or tends to cause a child's delinquency, then a whole range of conduct outside the intent of the statute is proscribed. It seems to me

the correct inquiry is whether the defendant's actions are adapted or calculated and should be expected, in the ordinary course of events, to cause a particular child[10] to commit the alleged act of delinquency.

Diane told the defendant she might leave home. The defendant stated he could arrange a place for her to stay should she decide to do so. The record is unclear whether the defendant's statement was volunteered or was in response to a specific inquiry for help by Diane. Either way, the statement was at most an offer of assistance should assistance be requested. Furthermore, there is no evidence the defendant recommended that Diane leave home. On the record before us, the trier of fact would not have been justified in concluding that the defendant encouraged Diane to leave home, had that been the charge.

## IV.

It is arguable that in using the word "harbor" in the complaint and warrant the prosecution charged the defendant with concealing Diane from her parents. Whatever ambiguity there may be in the charge should be resolved in the defendant's favor, on the principle stated in *People* v. *Anderson, supra.* The more customary definition of harbor, as used in the sense of harboring persons rather than ships, is "any place of shelter or refuge" or "to

---

[10] The movies, television, magazines and phonograph record companies, together with other aspects of our culture, in a sense contribute to the delinquency as well as constructive development of all persons under 17, or over 17. The lure of opportunities in our cities, of opportunities with the public communication media, including phonograph record companies, does "tend" to awaken ambitions which "tend" to encourage young people such as Diane to leave home. Their message is directed to all who might want to leave home, and to those who have never harbored such a thought. Surely all those responsible for such inducements are not criminally liable if an individual under 17 yields to such temptation.

give shelter to"; "offer refuge to." After those definitions comes "to conceal; hide."[11]

One charged with crime should not be left in doubt
about the substance of the charge. It is one thing
to be charged with providing shelter; it is quite
another to be charged with concealing a runaway
child. If the people desire to charge an individual
with concealing a runaway child, they should do so
clearly in words free from doubt.[12]

## V.

The statutory definition of delinquency is loosely
drawn. It has been claimed that this is necessary,
it being impossible to enumerate all ways in which
children can be corrupted. *State* v. *Crary, supra.*
Nevertheless, legislation declaring behavior criminal
must be so "plain and unambiguous that 'he who
runs' may read, and understand whether his conduct is in violation of its provisions." *People* v.
*Ellis* (1918), 204 Mich 157, 161.

Among the statutory grounds for declaring a
child a juvenile delinquent are that he "repeatedly

---

[11] See The Random House Dictionary of the English Language.
Similarly, Webster's Third New International Dictionary lists first,
"to give shelter or refuge," and second "to receive clandestinely and
conceal."

[12] The prosecutor offered no evidence that the defendant concealed
Diane from her parents. There was no proof he discouraged Diane
from communicating with her parents or otherwise prevented them
from learning her whereabouts.

The prosecutor argues that the defendant should have telephoned
Diane's parents of her whereabouts. That, indeed, would have been
the correct thing for him to have done. However, the statute does
not make it a criminal act for one knowing a runaway's location to
fail to transmit this information to the child's parents. Furthermore, the defendant was not charged with failing to telephone her
parents, or with concealing her whereabouts from her parents, or
with conspiring with her to conceal her whereabouts from her parents,
or with keeping her in the motel in the sense of either concealment
or restraint of her liberty. The trial judge's finding that the defendant "kept" her in the motel must be read in light of the charge and
the evidence.

associates with immoral persons" or is leading an "immoral life" or "habitually idles away his or her time." The New York court of appeals recently spoke of the danger of overly embracive, loose language allowing too wide a discretion to the enforcing authority, in declaring unconstitutional a New York law making it unlawful for any person "to encumber or obstruct any street * * * with any article or thing whatsoever.":

"Where a statute is couched in such broad language that it is subject to *discriminatory application,* the resulting infringement on the exercise of freedom of speech far outweighs the public benefit sought to be achieved." *People* v. *Katz* (1967), 21 NY2d 132, 135 (233 NE 2d 845, 847, 286 NYS2d 839) (Emphasis supplied.)

The portion of our statute making it a crime to contribute to a child's association with "immoral" persons, to his "immoral" life or habitual "idleness" is also subject to discriminatory application.

In a recent decision, *United States* v. *Robel* (1967), 389 US 258 (88 S Ct 419, 425, 19 L Ed 2d 508, 515), the United States Supreme Court spoke of "the fatal defect of overbreadth * * * [in barring] employment both for association which may be proscribed and for association which may not be proscribed consistently with First Amendment rights.[13]

Even as a minor Diane enjoys the constitutional right of association.[14] She may not be denied that right by loosely-drawn legislation aimed either at

[13] In *Watertown* v. *Christnacht* (1917), 39 SD 290 (164 NW 62), a statute forbidding male persons to associate with "common courtesans and prostitutes" was held invalid as violative of the constitutional right of association. Any other rule, said the court, would prevent male persons (*e.g.,* ministers, physicians) from personal effort "to uplift and ameliorate the condition of fallen women."

[14] Compare *In re Gault* (1967), 387 US 1 (87 S Ct 1428, 18 L Ed 2d 527).

her or her associates. Although the State may by properly drawn legislation proscribe for minors under 17 that which it could not constitutionally seek to determine for adults,[15] it is not "an answer to an argument that a particular regulation of expression is vague to say that it was adopted for the salutary purpose of protecting children."[16]

It has been held that a statute making mere idleness a crime is vague and therefore void.[17] Loitering statutes generally are being struck down by State courts in increasing numbers.[18]

---

[15] *Ginsberg* v. *New York* (1968), 390 US 629 (88 S Ct 1274, 20 L Ed 2d 195).

[16] *Interstate Circuit, Inc.,* v. *City of Dallas* (1968), 390 US 676, 689 (88 S Ct 1298, 20 L Ed 2d 225), holding an ordinance's definition of "not suitable for young persons" to be unconstitutionally vague; similarly see *Rabeck* v. *New York* (1968), 391 US 462 (88 S Ct 1716, 20 L Ed 2d 741).

[17] See *Ex parte McCue* (1908), 7 Cal App 765 (96 P 110) *(dictum); Territory of Hawaii* v. *Anduha* (CA 9, 1931), 48 F2d 171, 172, where the court approved the following statements of the trial judge: "'There is nothing in the charge or in the attempted definition of an offense in the act which would enable a resident to know the dividing line between innocent idleness and criminal idleness in a public place. This determination is delegated to the whim of every police officer who desires to interfere with the personal liberty of a resident within the Territory."

See, also, *City of St. Louis* v. *Gloner* (1908), 210 Mo 502 (109 SW 30).

[18] *Ex parte Mittelstaedt* (1957), 164 Tex Crim 115 (297 SW2d 153); *Commonwealth* v. *Carpenter* (1950), 325 Mass 519 (91 NE 2d 666); *State* v. *Caez* (1963), 81 NJ Super 315 (195 A2d 496); *City of Cleveland* v. *Baker* (Ohio Ct of Appeals, 1960), 167 NE 2d 119; *Soles* v. *City of Vidalia* (1955), 92 Ga App 839 (90 SE2d 249); and *Shuttlesworth* v. *City of Birmingham* (1965), 382 US 87 (86 S Ct 211, 15 L Ed 2d 176). See Constitutionality of Loitering Ordinances, 6 St. Louis Univ L J 247 (1960).

Also relevant is *Alegata* v. *Commonwealth* (1967), 353 Mass 287 (231 NE2d 201), discussing the definiteness requirement in 5 different cases, holding 4 statutes unconstitutional and 1 valid. Struck down were a complaint based on a statute charging the defendant with "being abroad in the night time and being suspected of unlawful design," failing to "give a satisfactory account of himself"; a statute defining vagrants as "idle persons who, not having visible means of support, live without lawful employment"; a statute defining a tramp as one who lives "without labor or visible means of support"; and a statute punishing one "known to be a thief or burglar" who acts "in a suspicious manner" around certain establishments. The court saved only a disorderly conduct provision which "aims at activities which *intentionally* tend to disturb the

Cases resting conviction on the interpretation of the word "immoral" have received unfavorable treatment by the courts.[19]   In *State* v. *Vallery* (1948), 212 La 1095 (34 So 2d 329, 331), the court held unconstitutionally vague a provision declaring that one contributes to the delinquency of a juvenile by, among other things, "encouraging a person under 17 to perform any immoral act."   Any other holding, said the court, would:

"clothe the several courts of this state with the power to not only decide what constitutes an immoral act within the concept of the community's accepted standard of 'immoral' but also to determine just what are the well established and well accepted standards of morality in the various communities of which these respective districts are composed, thus delegating to the judiciary a function that is exclusively within the province of the legislature, with the result that there would be no certain or understandable rule and no uniform standard of conduct to guide the individual in ascertaining what acts it is his duty to avoid, doing violence not only to the constitutional requirement that the ascertainable standard of guilt by which all citizens are to be guided be fixed by the legislative branch of the government but also to the equal protection and due process clauses safeguarding against discrimination."[20]

---

public tranquility, or alarm or provoke others." (p 211) (Emphasis supplied.)

See, also, this Court's opinion in *City of Detroit* v. *Bowden* (1967), 6 Mich App 514.

[19] *State* v. *Musser* (1950), 118 Utah 537 (223 P2d 193) on remand from *Musser* v. *Utah* (1948), 333 US 95 (68 S Ct 397, 92 L Ed 562); *State* v. *Truby* (1947), 211 La 178 (29 So 2d 758). See cases collected and cited in *Interstate Circuit, Inc.* v. *City of Dallas* (1968), 390 US 676 (88 S Ct 1298, 20 L Ed 2d 225, 231).

[20] Contra, *Commonwealth* v. *Randall* (1957), 183 Pa Super 603 (133 A2d 276), *certiorari denied* 355 US 954 (78 S Ct 539, 2 L Ed 2d 530) (upholding a statute making it a misdemeanor to "corrupt the morals" of youth).   Similarly, see *State* v. *Friedlander* (1926), 141 Wash 1 (250 P 453); *Loveland* v. *State* (1939), 53 Ariz 131 (86

It will be noted that in the *Vallery* case a statute which spoke in terms of an "immoral act" was found unconstitutional. Our statute speaks of association with an "immoral person" or leading an "immoral life." An immoral act is a single act. But when the proscription is of association with an immoral person, we must concern ourselves with the collateral question of the totality of the person's conduct with whom the minor has allegedly associated.

Although most of the cases which have considered contributing statutes have sustained their constitutionality (see footnote 20), there is reason to believe such statutes will be more closely scrutinized in the future.[21] In *State v. Gallegos* (Wyo, 1963), 384 P2d 967, the court struck down as unconstitutionally vague the portion of the Wyoming contributing statute making it unlawful "to cause, encourage, aid or contribute to the endangering of the child's health, welfare or morals." The court sustained the claim that the statute (p 968) "furnishes no standard as to what the endangering of a child's health, welfare or morals is, and hence it leaves decision to arbitrary judgment, whim and caprice", stating that it was "utterly impossible   *   *   *   to know just what

P2d 942), sustaining broadly phrased contributing statutes. See *State v. Barone* (Fla, 1960), 124 So 2d 490; *United States v. Meyers* (Alaska, 1956), 143 F Supp 1; *State v. Montalbo* (1954), 33 NJ Super 462 (110 A2d 572); *State v. McKinley* (1949), 53 NM 106 (202 P2d 964); *People v. Friedrich* (1943), 385 Ill 175 (52 NE 2d 120), which uphold contributing statutes somewhat like our Michigan statute. *Cf. People v. De Leon* (1917), 35 Cal App 467 (170 P 173) (upholding a contributing statute, yet placing limitations upon its scope).

[21] See Contributing to Delinquency, 8 St Louis Univ L J 59; Amsterdam, Federal Constitutional Restrictions on the Punishment of Crimes of Status, Crimes of General Obnoxiousness, Crimes of Displeasing Police Officers, and the Like, 3 Crim L B 205 (1967); Lacey, Vagrancy and Other Crimes of Personal Condition, 66 Harv L Rev 1203 (1953); and The Void for Vagueness Doctrine in the Supreme Court, 109 U of Pa L Rev 67 (1960). See, also, Justice Black's dissent in *Edelman v. California* (1953), 344 US 357 (73 S Ct 293, 97 L Ed 387); and Justice Douglas's dissent in *Hicks v. District of Columbia* (1966), 383 US 252 (86 S Ct 798, 15 L Ed 2d 744).

acts are and what acts are not forbidden by the statute."

"No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta* v. *New Jersey* (1939), 306 US 451, 453 (59 S Ct 618, 83 L Ed 888).

## VI.

It may be answered that even if the referred-to portions of the relevant statute are void for vagueness, this would not justify a conclusion that the subdivision concerning desertion-of-one's-home-without-sufficient-cause is also void. If the deserting-one's-home subdivision is severable, the enforceability of that subdivision might indeed be sustained.

However, even if the valid subdivisions are severable, the complaint and warrant here do not specify which subdivision or provision thereof was invoked. It will be recalled that the statute lists at least 9 different acts of delinquency in its various subdivisions.

Entirely apart from the complaint and warrant's failure to specify which subdivision or provision thereof was here invoked, there is no assurance that the trial judge rested conviction on the constitutionally valid subdivision on which the majority relies in affirming the defendant's conviction, rather than on one of the constitutionally invalid provisions. The trial judge's findings do not state the provision on which he relied. The conduct *complained* of (harboring Diane "while she was missing from home") and of which the trial judge *found* the defendant guilty ("he paid her rent and kept her at the motel"), could have been deemed related to the unconstitutional association with immoral persons or habitual idleness provisions as well as the constitutional deserting-one's-home provision.

Although it appears to us from the evidence that a subdivision which *might* properly have been invoked, and the one which may have been in the draftsman's mind when drawing the complaint and warrant, was the one concerning deserting-one's-home, the *failure to have charged* that Diane deserted her home "without sufficient cause" leaves the matter of the draftsman's intent very much in doubt. The *failure of the trial judge's findings* (see footnote 7) *to state* which subdivision or provision thereof he relied on in convicting the defendant leaves his decision indefinite. In all events, the people's *failure to prove* a necessary element of the crime under the deserting-one's-home subdivision (*i.e.,* that Diane left her home *"without sufficient cause"*) precludes sustaining the defendant's conviction even if we indulge in the surmise that the draftsman intended to charge and the trial judge convicted because he found a violation of that subdivision. The due process guaranteed by the Fourteenth Amendment is denied one who is convicted of a crime without proof of an essential ingredient of the crime.[22]

Prosecutions under statutes such as this should be carefully circumscribed, not because of any hostility towards the legislation, but because of the

---

[22] *Thompson* v. *City of Louisville* (1960), 362 US 199 (80 S Ct 624, 4 L Ed 2d 654); *Johnson* v. *Florida* (1968), 391 US 596 (88 S Ct 1713, 20 L Ed 2d 838). In *Thompson,* the United States Supreme Court, in language reminiscent of that previously quoted from *Cole* v. *Arkansas, supra,* observed (p 206):

"Just as 'Conviction upon a charge not made would be sheer denial of due process,' so is it a violation of due process to convict and punish a man without evidence of his guilt." In *Thompson,* the Court found that the city of Louisville had failed to offer any (p 205) "semblance of evidence from which any person could reasonably infer that petitioner could not give a satisfactory account of himself or that he was loitering or loafing there (in the ordinary sense of the words) without 'the consent of the owner or controller' of the cafe." In the recent *Johnson* case the Court concluded that the State of Florida had failed to sustain its burden of proving the " 'wandering or strolling' ingredient of the crime" and reversed the defendant's conviction of violating Florida's vagrancy statute on the ground that a conviction without evidence denies due process.

real danger that unless ground rules are laid down some accused persons will be deprived of their rights. The defendant in this case may indeed be a scoundrel. His role in Diane's leaving home may be much greater than that which appears on the record. Her denials of any improprieties in the motel room on his frequent visits there might not be believed. Nevertheless, the defendant should not be convicted of a charge other than the one lodged against him. His conviction should not be affirmed on appeal unless supported by the trial judge's findings of fact.

There can be no more important legislation than legislation designed to protect the young against those who would corrupt them. By now there must have been sufficient experience with these statutes to enable those who work with them to articulate sound, workable, and constitutionally valid legislation.

Since the defendant could not have been convicted under the unconstitutionally vague provisions, and there was a failure of proof under the constitutionally valid subdivision relied on in the majority opinion, I would reverse, vacate the sentence, and discharge the defendant.