## Commonwealth *v.* Stroik, Appellant.

Argued October 14, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Allen S. Olmsted, 2nd,* with him *Leon B. Stroik,* appellant, in propria persona.

*Basil C. Clare,* Assistant District Attorney, with him *Raymond R. Start,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., January 19, 1954:

This is an appeal from the lower court's refusal to grant a new trial to the defendant who was found guilty by a jury of receiving stolen goods and contributing to the delinquency of two children. The appellant contends there was insufficient evidence to support the convictions. The fairness of the court's charge is challenged.

The Commonwealth's evidence established that on December 5, 1952, Peter G. . . ., a 14 year old boy, and Terry A. . . ., aged 8 years, had broken into several places and had stolen money, a wallet, a hammer, a screw driver, some bullets, and flashlight bulbs. Peter was apprehended by police as the boys were preparing to break into a school house. Terry got away but Peter told the police where he lived. The police went to the home of the defendant, Stroik, where Terry lived. It was between 2 and 3 o'clock in the morning. Here the police saw Stroik and Terry counting money on the kitchen table. When one officer knocked on the door another officer saw Stroik grab Terry's hat, push the money into it and put the hat under the ice box. The officer, likewise, saw Terry throw what later was disclosed to be money under the living room couch. When the officers entered and asked Stroik about the money, he denied any knowledge of it. He was then confronted by the police with the money which they retrieved from under the ice box. It was subsequently determined that the money had been taken from a business establishment by the two boys a few hours before. The police also found a stolen radio in the house.

Upon questioning Peter and Terry it was disclosed that Terry lived with Stroik in the home of Stroik's mother; that Peter had been living with his stepfather and mother, all of whom were displaced persons from Germany; that they had been residents of the United States for approximately one year; that Peter had run away from home about three or four weeks prior to his being apprehended by the police, and had come to live with Terry and the defendant while defendant's mother was away. Upon her return Peter was lodged in the cellar for fear that Stroik's mother would not approve of Peter's being with them. A cellar window was left open so that Peter could enter and leave without the mother's knowledge.

The evidence further indicates that the two boys were stealing and that they brought the loot home. The record discloses that they told Stroik that the articles were stolen and that he did not punish or reprimand them; neither did he make any effort to return the stolen material to the rightful owners.

Peter testified that he and Terry stole cigarettes from a car in a gas station and that he had told Stroik that they had stolen the cigarettes and that the defendant took them and smoked them. Peter likewise indicated that items stolen by him and Terry were taken from them by the defendant with full knowledge that said items were stolen. The following testimony of Peter with reference to the stolen radio is revealing: "Q. He asked you where you got the radio? A. Yes, sir. Q. What did you tell him? A. We told him we stole it. Q. What did he say then? A. He didn't say anything then."

Despite the fact that Peter's home was only a block away, Stroik never told Peter's mother where he was, nor did he ever order Peter to return home. Stroik never contacted Peter's family until three

nights before the arrest and then solely for the purpose of ascertaining Terry's whereabouts.

The defendant, who had never been in trouble before, denied much of the testimony, and as to Terry pictured himself as a kind, helpful friend to a confused and abused boy. It is argued that, at the worst, the evidence discloses only omissions on the part of the defendant, such as his failure to compel Peter to return home.

The facts related above speak for themselves. The jury could reasonably find from the testimony of Peter that the defendant had received stolen property from the boys, with knowledge that the property was stolen.

The testimony of Peter and Terry are in some measure contradictory. Nevertheless, it was within the province of the jury to find the defendant guilty on the testimony of Peter alone if they were satisfied that he was telling the truth. *Commonwealth v. Bubna,* 357 Pa. 51, 67, 53 A. 2d 104 (1947).

There is sufficient evidence to justify the jury's finding that the defendant was guilty of receiving stolen goods. See *Commonwealth v. Joyce,* 159 Pa. Superior Ct. 45, 48, 46 A. 2d 529 (1946).

The evidence also supports the conviction on the charge of contributing to the delinquency of children.

Section 20 of The Juvenile Court Law of June 2, 1933, P. L. 1433, 11 PS 262, provides:

"Any person who contributes to the delinquency of any child to whom the jurisdiction of any juvenile court within this Commonwealth has attached, or shall hereafter attach, or who knowingly assists or encourages such child in violating his or her parole or any order of the said court, shall be guilty of a misde-meanor."

Provisions of the law such as this have been held to be not a statute of reform but a statute of prevention. *State v. Adams,* 163 P. 403, 405 (Wash.) (1917).

"Delinquency" is a very broad term involving in some cases a single act and in others a course of conduct, sometimes with no single act sufficiently serious to warrant a finding of delinquency. See Sec. 1 Par. 4 of The Juvenile Court Law of 1933, supra, 11 PS 243. The boys involved in this case were properly found by the Juvenile Court to be delinquent. The finding of the Court in this respect was made before the trial of the defendant and the record so shows.

"Contributing to delinquency" is also a broad term involving conduct toward a child in an unlimited variety of ways which tends to produce or to encourage or to continue conduct of the child which would amount to delinquent conduct.

If the jurisdiction of the Juvenile Court does not attach to the child before the verdict of the jury, the defendant cannot be convicted of contributing to the child's delinquency. *Commonwealth v. Wink,* 170 Pa. Superior Ct. 96, 103 (1951), *Commonwealth v. Jordan,* 136 Pa. Superior Ct. 242, 7 A. 2d 523 (1939). But the offense is not limited to conduct toward a child after he has been declared a delinquent. ". . . defendants are indictable for acts contributing to delinquency of children, which acts were committed before the children were actually apprehended and brought before the juvenile court." *Commonwealth v. Jordan,* supra, Page 248.

The contributing to the delinquency may be by either acts or omissions. *People v. Calkins,* 119 P. 2d 142, 144, (Cal. 1941).

Thus, it is immaterial whether the children were declared delinquent by the court before or after the

defendant contributed to their delinquency, so long as they were declared delinquent before verdict, and the defendant by acts of commission or omission contributes to that delinquency.

The defendant argues that his acts of contributing were not specifically pin pointed. Contributing to the delinquency of a child, like the delinquency itself, can be the result of a course of conduct. Harboring a young child who is known to have surreptitiously left his home and is truant from school, permitting a young child of whom one has custody to be wandering the streets between 2 and 3 o'clock in the morning, assisting a child in deceiving and lying to law enforcement officers concerning money which the child has brought home during the night, and other conduct of the defendant appearing in the testimony, if not separately, at least taken together, represents conduct toward these children which undoubtedly contributed to their delinquency.

If an example of a single act of contributing to delinquency would be necessary all we would have to do would be to point to the sufficiency of the evidence to sustain the conviction for receiving stolen goods. Receiving stolen goods from a delinquent under circumstances which make the receiving a crime is contributing to the delinquency of the child. *People v. Dritz,* 18 N.Y.S. 2d 455 (1940).

The appellant's objection to the charge is very general in nature. The brief deals largely with what it terms, "the philosophy" of the learned trial Judge Henry G. SWENEY, whose interest in the Juvenile Court is well known both in and beyond Delaware County. Presumably because of his interest in delinquent children it is argued that in his charge and opinion he has not placed the strict interpretation upon the act required of a criminal statute.

We have read the charge of the learned court and see in it neither evidence of prejudice nor error.

Counsel's objections center around a two fold error on his part. First, he does not view the evidence in the light most favorable to the Commonwealth as he is required to do after a verdict of guilty. *Commonwealth v. Kauffman,* 155 Pa. Superior Ct. 347, 38 A. 2d 425 (1944). Secondly, he puts much too narrow an interpretation upon both delinquency and contributing to it. For example, he argues that the conduct of the defendant when the police came to his home and found the child and him counting money, could not possibly have contributed to the child's delinquency because the delinquency was the stealing, and it was necessary for the Commonwealth to show the defendant did something before the stealing to "enduce" it. He assumes that an adult demonstrating to a young child how to escape detection by the police for larcenies and burglaries, and teaching him to lie to and deceive police officers cannot contribute to a child's delinquency. This is putting much too narrow an interpretation on the meaning of both "contributing" and "delinquency."

As the lower court well said, in its opinion, if the defendant took from the boys articles which he knew to be stolen "he was sanctioning their conduct, approving their actions and, as we view it, this is contributing to delinquency." Under the facts of this case that is a correct statement of the law.

The judgment is affirmed; and it is ordered that appellant appear in the court below at such time as he may be there called and that he be committed by that court until he shall have complied with his sentence or any part of it which had not been served at the time his appeal was made a supersedeas.