477 P.2d 320

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Robert Charles Simon BACA, Defendant-Appellant.**

**No. 504.**

Court of Appeals of New Mexico.

Nov. 13, 1970.

William S. Dixon, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for defendant-appellant.

James A. Maloney, Atty. Gen., Frank N. Chavez, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SPIESS, Chief Judge.

Defendant has appealed from his conviction on two charges of the sale of a narcotic drug contrary to the provision of § 54–7–14, N.M.S.A.1953. One sale allegedly occurred on October 19, 1968, the other on November 15, 1968. The appeal is presented under four points.

The fourth point asserts reversible error by the admission into evidence testimony of a police officer relating to the contents of a tape recording of certain statements made by an informant. This point, in our opinion, is determinative of the appeal. The following facts and testimony we consider pertinent.

During the course of investigating certain narcotics violations, the police employed one Chavez as an undercover agent, or informant. Chavez had for some time been addicted to narcotics, and professed to be acquainted with persons engaged in the illegal traffic of narcotics in Bernalillo County. This informant testified that he was acquainted with the defendant whom he identified as "Bobby Baca." Chavez testified to having purchased narcotics from defendant Baca on October 19, 1968.

Immediately prior to the alleged sale on November 15, 1968, the informant, Chavez, had been wired with a radio transmitter. A receiver was attached by the police to a recorder which produced a tape of sound which was transmitted. Chavez testified that after the device had been attached to him by the officers he left their presence in his car and met the defendant, Baca, who accompanied him and at that time he purchased a quantity of heroin from the defendant. A police officer testified that following the November 15 event he returned to his office, put the tape on a machine and took notes from the recording.

At the trial the officer was permitted, over objection, to testify as to what was recorded on the tape by reading his notes. The officer's testimony relating to the transmission and recording is, we think, relevant. Upon being asked if he was able, with the equipment, to hear any of the conversations which took place in Chavez' car, the officer answered:

"There was some conversation heard; however, this happens to be one of the poorest tapes that we have made, and this, I would say, would be the conditions. Now, we had the equipment on Mr. Chavez. We could hear the music from the Music Box as he approached the door and talked to Mr. Baca. When they got back into the car, there was a slight drizzle that day and Chavez had his windshield wipers on, and this, plus some distortions made by the car motor, the most of the conversation—in fact, all of the conversation that is audible to me, that I could hear and make out was due to the fact that Mr. Chavez was the closest one to the mike and it was his voice. You can hear a voice in the background; however, you can not make out what it says, outside of Mr. Chavez' voice."

Testifying from his notes as to the recording, the officer repeated statements attributed to the informant, Chavez, and relating to heroin, including such statements

as: "Give me a cap in a hurry," and "This is good heroin." The officer, further testifying from his notes, said that the tape contained the following recorded statements of the informant, Chavez.

"'Good, Bobby. I'm going to see if I can pick up some change and I'll connect some'—or wait—'I'll connect a couple more, a couple of caps more.'"

A number of objections were urged to the officer testifying from his notes as to what was recorded on the tape. One objection was that "no foundation was laid." In our opinion, a proper foundation for admitting the testimony would require a showing, which would assure the authenticity of the recording from which the notes were taken, together with its reliability. We are not cited to, nor do we find a case in this jurisdiction specifically establishing requirements for the authentication of recordings of the kind involved. Applicable, and we think proper rules, are contained in State v. Driver, 38 N.J. 255, 183 A.2d 655 (1962), where the court said:

"As a condition to admissibility, however, the speakers should be identified and it should be shown that (1) the device was capable of taking the conversation or statement, (2) its operator was competent, (3) the recording is authentic and correct, (4) no changes, additions, or deletions have been made, and (5) in instances of alleged confessions, that the statements were elicited voluntarily and without any inducement."

See also, Belfield v. Coop, 8 Ill.2d 293, 134 N.E.2d 249, 58 A.L.R.2d 1008 (1956); Steve M. Solomon, Jr., Inc. v. Edgar, 92 Ga.App. 207, 88 S.E.2d 167 (1955); State v. Williams, 49 Wash.2d 354, 301 P.2d 769 (1956); Cummings v. Jess Edwards, Inc., 445 S.W. 2d 767 (Texas Civ.App.1969).

The record here discloses that a proper foundation for the admissibility of the officer's testimony was not provided in that no adequate showing was made as to the authenticity of the recording from which the notes were taken.

It was not made to appear that changes, additions, or deletions had not been made.

Further, the tape was neither introduced into evidence nor played for the court and counsel so as to permit a determination of the accuracy of the officer's notes.

In our opinion, the objection to the officer's testimony should have been sustained and the admission of the testimony in evidence was reversible error. Since the credibility of the informer was severely attacked and since the inadmissible testimony went to his credibility, the error in its admission goes to both counts.

Because we direct a new trial it is appropriate that we consider the contention that defendant was denied due process of law and the right to a speedy trial in violation of constitutional mandates. Three occurrences of delay are asserted each of which defendant argues is sufficient in itself to warrant dismissal of the indictment. These occurrences are: (1) pre-arrest delay; (2) delay in the appointment of counsel, and (3) delay in bringing defendant to trial.

Defendant was arrested January 23rd, 1969, for offenses allegedly committed October 19, 1968, and November 15, 1968. On May 15, 1969, counsel was appointed for defendant and he was brought to trial November 19, 1969. It is, of course, fundamental that both the federal and state constitutions guarantee due process of law and a speedy public trial to persons charged with crime. Each occurrence will be separately considered.

### PRE-ARREST DELAY

As has been shown, delays of ninety-six and sixty-nine days occurred between the alleged commission of the offenses and defendant's arrest. It is defendant's position that the delay was unjustfied, unreasonable, and prejudicial to his defense. Specifically, it is asserted that, as a result of the delay, defendant was unable to reconstruct events of material dates so as to vindicate his innocence. The delay, defendant argues, violated rights guaranteed by both federal and state constitutions.

The charges against defendant, as has been stated, were the result of an under-

cover operation conducted by the police. Marvin Lee Chavez was employed as an informant or undercover agent. Chavez' employment began September 27, 1968, and terminated December 28, 1968. During the period he made 140 purchases of narcotics from fifty-six persons. On January 10, 1969, a substantial number of persons who had allegedly sold drugs to Chavez were arrested. Defendant was placed under arrest January 23, 1969.

The state argues that the delay was required in the accomplishment of effective narcotics law enforcement in that if defendant had been promptly arrested following the alleged sales, other suspected sellers would have become alerted and the usefulness of the informant would have been destroyed.

It has become recognized that in appropriate cases unreasonable pre-arrest delay may so prejudice a defendant as to amount to the denial of constitutional rights. Ross v. United States, 121 U.S.App. D.C. 233, 349 F.2d 210 (1965); Woody v. United States, 125 U.S.App.D.C. 192, 370 F.2d 214 (1966); United States v. Lee, 413 F.2d 910 (7th Cir. 1969); United States v. Jones, 403 F.2d 498 (7th Cir. 1968); cert. denied, 394 U.S. 947, 89 S.Ct. 1280, 22 L.Ed. 2d 480; United States v. Hauff, 395 F.2d 555 (7th Cir. 1968), cert. denied, 393 U.S. 843, 89 S.Ct. 124, 21 L.Ed.2d 113; United States v. Deloney, 389 F.2d 324 (7th Cir. 1968), cert. denied, 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 417; United States v. Capaldo, 402 F.2d 821 (2nd Cir. 1968), cert. denied, 394 U.S. 989, 89 S.Ct. 1476, 22 L. Ed.2d 764; United States v. Feinberg, 383 F.2d 60 (2nd Cir. 1967); Chapman v. United States, 376 F.2d 705, (2nd Cir. 1967); United States v. Rivera, 346 F.2d 942 (2nd Cir. 1965). For a cogent discussion of relevant opinions, see State v. Rountree, 106 N. J.Super. 135, 254 A.2d 337 (Middlesex Co. Ct. 1969).

An appropriate statement is contained in the concurring opinion of Wright, J., in Nickens v. United States, 116 U.S.App.D.C. 338, 323 F.2d 808 (1963).

"* * * The right of a suspect to speedy determination of guilt or innocence is not lost merely because the delay in the process occurs before the formal charge, rather than after."

\*  \*  \*  \*  \*  \*

"Indeed, a suspect may be at a special disadvantage when complaint or indictment, or arrest, is purposefully delayed. With no knowledge that criminal charges are to be brought against him, an innocent man has no reason to fix in his memory the happenings on the day of the alleged crime. Memory grows dim with the passage of time. Witnesses disappear. With each day, the accused becomes less able to make out his defense. If, during the delay, the Government's case is already in its hands, the balance of advantage shifts more in favor of the Government the more the Government lags. Under our constitutional system such a tactic is not available to police and prosecutors."

In *Ross*, supra, cited by defendant, a conviction involving a narcotics violation was reversed and a conclusion expressed that defendant had been denied due process in that his defense was impaired where charges against him were not made for some seven months following the alleged commission of the crime. A further circumstance apparently influencing the reversal was that the conviction was based solely upon the uncorroborated testimony of an undercover police officer whose recollection of events and identification of defendant depended solely upon his notebook.

The court in *Ross* recognized the practical necessity for undercover investigations in the accomplishment of effective police work, particularly in detecting violations of the narcotics laws. It was there conceded that the effectiveness of an undercover agent would terminate when it becomes known that he is such an agent.

Under the rule announced in *Ross* the reasonableness of the conduct of the police in the particular case is to be weighed against the possible prejudice to the de-

fendant resulting from delay in arrest. In the case at Bar, as had been shown, the defendant's arrest was postponed in the interest of effective police work, and was not unreasonably delayed after the general investigation was concluded. The refusal of the trial court to dismiss the indictment was not error.

## DELAY IN APPOINTMENT OF COUNSEL

■ Defendant contends that the state was negligent in failing to appoint counsel for him until May 15, 1969, approximately four months after his arrest and seven months after the alleged commission of the first offense for which he was indicted. The record discloses that defendant was indicted May 9, 1969, and counsel was appointed to represent him by the District Court on May 15, 1969.

Rule 92 of the Rules of Civil Procedure (§ 21–1–1(92), N.M.S.A.1953 (1967 Pocket Supp.) makes it:

"* * * duty of the judge of any inferior court, sitting as a committing magistrate, immediately upon any defendant's being brought before him following his arrest upon a charge constituting a felony, to inform such person of his right to assistance of counsel at every stage of the proceeding, and that if he is indigent, that counsel will be appointed to represent him. If after being so informed, unless waived as hereinafter provided and such person is in fact indigent, the judge of such inferior court shall immediately certify such facts in writing to the district court, requesting the appointment of counsel on behalf of such defendant by the district judge."

■ The record is silent as to when defendant was brought before a magistrate following his arrest, or as to what there occurred. The record is likewise silent as to whether a showing of indigency was made by defendant before a magistrate following his arrest, which showing is a prerequisite to the right to court-appointed counsel. State v. Powers, 75 N.M. 141, 401 P.2d 775 (1965).

We find no basis in the record for a contention that the state negligently failed to appoint counsel for defendant until the 15th of May, 1969. It is not shown that the refusal of the trial court to dismiss the indictment upon this ground was improper.

## DENIAL OF SPEEDY TRIAL

Part of the delay between commission of the offenses and time of trial was in the interest of effective narcotics law enforcement. This is the pre-arrest delay. The record shows that defendant was "out on bond" but does not show when, after his arrest, he was released on bond. The grand jury indictment was May 9, 1969, an order for court appointed counsel was entered May 15, 1969, arraignment was June 2, 1969, numerous defense motions were filed July 10, 1969. Notice of trial on October 13, 1969 is dated August 29, 1969. Another defense motion was filed October 2, 1969. The defense motions were heard October 17, 1969 and trial began on November 19, 1969.

■ Defendant claims a denial of a speedy trial solely because of the elapsed time between the offenses and his trial. He does not claim any prejudice resulting from this elapsed time. Defendant's claim is an insufficient basis for a holding that his constitutional right to a speedy trial has been denied. All the circumstances must be considered. The circumstances outlined above give an explanation of the delay. These circumstances include delay for purposes of law enforcement and some delay due to the defense motions. We hold that on the record before us, there has been no deprivation of the right to a speedy trial. State v. Adams, 80 N.M. 426, 457 P.2d 223 (Ct.App.1969); State v. McCroskey, 79 N.M. 502, 445 P.2d 105 (Ct.App.1968). We so hold without considering the fact that defendant did not request an earlier trial or raise the issue to the trial court. See Raburn v. Nash, 78 N.M. 385, 431 P.2d 874 (1967).

It follows from what has been said that the conviction of defendant upon both counts of the indictment should be reversed and the cause remanded to the district court with instructions to grant defendant a new trial.

It is so ordered.

WOOD and HENDLEY, JJ., concur.