484 P.2d 329

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Thomas Wayne CRUMP, Defendant-Appellant.**

**No. 9143.**

Supreme Court of New Mexico.

April 26, 1971.

386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); Raburn v. Nash, 78 N.M. 385, 431 P.2d 874 (1967); State v. Polsky, N.M. App., 82 N.M. 393, 482 P.2d 257, decided February 5, 1971.

The acts constituting the offenses with which defendant was charged and convicted occurred on July 13, 1967. He immediately fled the jurisdiction; was apprehended in Michigan on August 2, 1967 by the authorities in that state for a crime committed there; was incarcerated in the Michigan Penitentiary; was so imprisoned when indicted by a New Mexico Grand Jury on February 21, 1969; was returned to New Mexico on about March 24 or 25, 1970; two attorneys were appointed to represent him on March 25 and 26, 1970; and his trial commenced on April 20, 1970.

We agree with the State's contention that the period prior to the filing of the indictment on February 21, 1969 is not to be considered in determining whether there was a violation of defendant's constitutional right to a speedy trial. Oden v. United States, 410 F.2d 103 (5th Cir. 1969), cert. denied, 396 U.S. 863, 90 S.Ct. 138, 24 L.Ed.2d 116 (1969); Harlow v. United States, 301 F.2d 361 (5th Cir. 1962), cert. denied, 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed. 2d 56 (1962); Hoopengarner v. United States, 270 F.2d 465 (6th Cir. 1959); State v. Polsky, supra, and cases cited therein.

Defendant, in taking the opposite position, relies upon the case of Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed. 2d 1041 (1959), wherein the sole and precise question decided was whether the petitioner's alleged violation of the Federal Kidnapping Act had to be presented by indictment, as required by the Fifth Amendment to the Constitution of the United States and Rule 7(a), Federal Rules of Criminal Procedure, but in which the court stated: " * * * Moreover, if, contrary to sound judicial administration in our federal system, arrest and incarceration are followed by inordinate delay prior to indictment, a defendant may, under ap-

James T. Roach, Scott McCarty, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Leila Andrews, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

**OMAN, Justice.**

Defendant was convicted of robbery, kidnapping, and an attempt to commit murder. He was sentenced for each offense, and he appealed. We reverse the judgment of conviction and sentence for kidnapping, but otherwise affirm.

Defendant first claims he was deprived of his constitutional right to a speedy trial. This right is guaranteed by both the United States Constitution and the New Mexico Constitution. Klopfer v. North Carolina,

propriate circumstances, invoke the protection of the Sixth Amendment."

Nothing further is said in the opinion about the Sixth Amendment, about what constitutes an inordinate delay, or about what are appropriate circumstances under which to invoke the protection of the Sixth Amendment. However, it does appear the quoted language, in the context in which it was used, suggests the right to a speedy trial has application to times and events preceding the institution of formal charges against an accused. Nevertheless, as stated by the Court of Appeals in State v. Polsky, supra: " * * * we agree with the jurisdictions which have clearly and expressly passed upon this question, and which have held the constitutional right to a speedy trial arises, or becomes applicable, only upon the initiation of formal prosecution proceedings. * * * "

As shown above, defendant was imprisoned in Michigan when indicted in New Mexico on February 21, 1969, and was still so imprisoned when removed from that State to be returned to New Mexico to stand trial for the crimes he had committed here on July 13, 1967. Insofar as the record shows, he was not furnished a copy of the New Mexico indictment until about March 25, 1970 upon his arrival in New Mexico. However, he had told the Michigan authorities on August 2, 1967, he was wanted in New Mexico for murder, thereby indicating he believed he had killed his victim. This is clearly inconsistent with his present claim that by reason of his denial of a speedy trial witnesses were lost to him who could have established an alibi as to his presence in Arizona on July 13, 1967.

The claimed loss of alibi witnesses finds support only in an affidavit by one of his appointed counsel attached to a motion to dismiss the indictment for the reason that he had been deprived of his right to a speedy trial. Obviously the information concerning these claimed witnesses as to defendant's presence in Arizona on July 13, 1967 came from defendant himself. Un-

doubtedly the attorney was very diligent in his efforts to locate the claimed witnesses and any information which would have established an alibi, but his failure cannot be attributed to the State of New Mexico. If every unsupported claim by an accused of the loss of witnesses favorable to him, by reason of delay of the State in failing to bring the accused to trial sooner, were to be accepted as the truth and as a denial of his right to a speedy trial, it would be a rare case in which a defendant could not successfully assert such a defense. Compare State v. Polsky, supra.

" * * * The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice. * * * " Beavers v. Haubert, 198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950 (1905). See also, Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed. 2d 1047 (1968), (footnote 4 at 221); United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); Hoag v. New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed. 2d 913 (1958).

■ The guarantee of a speedy trial is to prevent undue and oppressive incarceration prior to the trial, to minimize anxiety and concern accompanying public accusation, and to limit the possibility that long delay will impair the ability of the accused to defend himself. United States v. Ewell, supra.

■ Defendant was tried in less than thirty days after his return to New Mexico. His prior incarceration was by the State of Michigan, and not New Mexico. He could hardly have suffered anxiety and concern over the charges before he was returned to New Mexico, when he claims to have first learned of the charges. This is particularly true, since he understood he was wanted for murder in New Mexico, and this understanding necessarily came from his acts and not any charges filed against him. If his claim of alibi be accepted as true, undoubtedly he was prejudiced

by his inability to locate the claimed witnesses who could have substantiated this claim, and it may be possible the delay prejudiced his opportunities for locating these claimed witnesses. However, the right to a speedy trial does not embrace the obligation on the part of the State ·to accept as true all claims of an accused that his ability to defend himself has been impaired by delay.

The essential ingredient of a criminal prosecution is orderly and deliberate expedition, and not speed. United States v. Ewell, supra; Smith v. United States, supra. A delay may not be purposeful or oppressive. United States v. Ewell, supra; Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). However, there is nothing to indicate any purposeful or oppressive delay by the State, and the passage of fourteen months from indictment to commencement of trial, under the facts here present, is not indicative of a denial of the right to a speedy trial. Compare Hoag v. New Jersey, supra.

Defendant's next three points relate to his claims that the trial court erred in refusing to quash the count in the indictment charging him with kidnapping, in submitting the issue of kidnapping to the jury, and in giving certain instructions and denying certain requested instructions concerning kidnapping. As already stated, we reverse the judgment, insofar as it relates to kidnapping, and the sentence imposed therefor.

The indictment charged, insofar as necessary to a disposition of the question now before us, that: "* * * the said THOMAS WAYNE CRUMP did unlawfully take and restrain by force Dale Johnson with intent that the said Dale Johnson be confined against his will *or* as a hostage, * * *" (Emphasis added)

The emphasized word "or" was changed to "and" by the trial court upon motion of the State prior to trial. Thus, the offense charged was consistent with the second definition of kidnapping as determined by this court in its interpretation of the meaning of our kidnapping statute [§ 40A–4–1, N.M.S.A.1953 (Repl.Vol. 6, 1964)] in State v. Clark, 80 N.M. 340, 455 P.2d 844 (1969). Defendant contends the trial court erred in permitting this amendment of the indictment. We need not decide this issue, but assume the validity of the amendment.

The indictment, by way of general charges in the opening paragraph thereof, and by way of preface to the succeeding three numbered counts in which the facts relied upon as constituting the three charged offenses were detailed, did recite that defendant was accused of "KIDNAPPING, contrary to Sections: 40A–4–1 and 40A–29–2, NMSA–1953" (Repl.Vol. 6, 1964). Section 40A–29–2 relates only to the sentencing authority. However, the three separate ways in which kidnapping may be accomplished under § 40A–4–1, supra, as decided by this court in State v. Clark, supra, were not detailed in the indictment. As indicated above, the facts allegedly constituting the offense were so detailed that they fell within the definition of only one of the disjunctively defined and prohibited acts which constitute kidnapping. State v. Clark, supra.

If a criminal offense is charged in general terms in an information or indictment, as provided in § 41–6–7, N.M.S.A.1953 (Repl.Vol. 6, 1964), and then is followed by a detailed statement of the facts allegedly constituting the offense, the prosecution is limited to establishing the facts so detailed. State v. Newman, 29 N.M. 106, 219 P. 794 (1923); see also 4 Anderson, Wharton's Criminal Law and Procedure, § 1762 (1957). This is necessarily so, since a defendant in a criminal case is entitled to know with what he is charged and to be tried solely upon the charges against him. Maxwell v. United States, 277 F.2d 481 (6th Cir. 1960); Murphy v. State, 231 So.2d 487 (Miss.1970). See also, State v. Roy, 40 N.M. 397, 60 P.2d 646 (1936).

Here the trial court, consistent with the kidnapping charge in the indictment, instructed the jury:

"  \* \* \* Kidnapping is the unlawful taking, restraining or confining of a person by force or deception, with the intent that the victim be confined against his will as a hostage.

"  \* \* \*

"  \* \* \* to find the defendant guilty of kidnapping you must find beyond a reasonable doubt that the defendant did unlawfully take, restrain or confine the victim by force with the intent that the victim be held as a hostage and confined against his will."

The sole question then is whether there is evidence to support the verdict of guilty of kidnapping as defined by the trial court, and specifically the question is whether there is evidence to support an intent by defendant to hold the victim as a hostage. The trial court instructed the jury "  \* \* \* that a 'hostage' means a person held in unlawful custody for the purpose of obtaining the performance of demands made by the person holding him." Objection was made to this definition of hostage, and we are of the opinion it is erroneous. The instruction clearly states a hostage is a person held "  \* \* \* for the purpose of obtaining the performance of demands made by the person holding him." This definition is too broad, in that it embraces not only demands made by defendant on a third person, but also demands made directly on the victim. The instruction given by the trial court is broad enough to include the concept of demand which would force the victim to service against his will, which is essential to the third type of act, or conduct, constituting kidnapping as defined in State v. Clark, supra. The State seems to concede this, but then asserts this intent, also, is sufficient to constitute kidnapping, when coupled with the required overt acts. This is true, but defendant was not so charged and the jury was not so instructed.

Hostage is defined in 1 Bouv.Law Dict., Rawle's Third Revision (being 8th Ed.) 1914 as:

"A person delivered into the possession of a public enemy in the time of war, as a security for the performance of a contract entered into between the belligerents.

"Hostages were frequently given as a security for the payment of a ransom-bill; and if they died their death did not discharge the contract; \* \* \* "

Hostage is defined in Black's Law Dictionary DeLuxe (4th Ed. 1951) as:

"A person who is given into the possession of the enemy, in a public war, his freedom (or life) to stand as security for the performance of some contract or promise made by the belligerent power giving the hostage with the other."

Webster's Third New International Dictionary, Unabridged (1961) defines hostage as:

"  \* \* \* the state of a person given or kept as a pledge pending the fulfillment of an agreement, demand, or treaty; a person in such a state; a pledge, security, or guarantee usually of good faith or intentions \* \* \*."

Hostage is defined in 41 C.J.S. at 361 (1944) as follows:

"In international law, a person given up to an enemy, as a security for the performance of a contract made between belligerent powers, or their subjects or citizens."

This definition of hostage has been copied in 19A Words and Phrases (Permanent Ed. 1970).

The intent to hold the victim as a hostage was not an element of kidnapping at common law. 1 Anderson, Wharton's Criminal Law and Procedure, § 371 at 735 (1957). The intent to hold as a hostage is not the same as intent to hold for ransom. State v. Clark, supra.

It appears clear from the foregoing definitions that the term hostage,

when used with reference to a person and in the context in which it is used in our kidnapping statute, as interpreted in State v. Clark, supra, implies the unlawful taking, restraining or confining of a person with the intent that the person, or victim, be held as security for the performance, or forbearance, of some act by a third person. Even viewing the evidence in the light most favorable to the State, and resolving all conflicts and indulging all reasonable inferences in favor of the verdict, as we must [State v. Torres, 78 N.M. 597, 435 P.2d 216 (Ct.App.1967)], we are unable to find any evidence in the record which would substantially support a finding that defendant intended to hold his victim as a hostage.

Defendant's fifth point relied upon for reversal is his contention that the trial court erred in permitting a Michigan State Police Officer to testify as to admissions made by defendant on August 2, 1967 upon his arrest in Michigan. These admissions consisted of a statement that he was wanted for murder in Albuquerque, New Mexico, and statements constituting his version of the events which preceded and accompanied his stabbing of the victim and the nature of the weapon with which he did the stabbing. His version differed greatly from the victim's version of the criminal acts committed, but his version, although it did not include a statement as to the date on which the offenses were committed, did place him in Albuquerque when they were committed, and did amount to admissions of criminal conduct on his part.

His contentions are he was not given the Miranda warnings and did not waive either his right against self-incrimination or his right to be furnished with an attorney.

Before the police officer was permitted to testify as to the statements, or admissions, in the presence of the jury, a hearing was conducted in the absence of the jury, and counsel for both the State and defendant examined the officer at length. There is some confusion as to the number of times defendant was warned of his rights, but the following appears to be the sequence of relevant events: Michigan Police Officers had arrested defendant as a suspect in connection with the stabbing of a woman at a bar before defendant was seen by the officer-witness; these other officers had warned defendant of his rights; the officer-witness, upon arriving at police headquarters, also advised defendant of his rights; a question then arose about the identification of defendant by the victim who was hospitalized and who was apparently to be moved to a hospital in another city by reason of the gravity of her stab wounds; defendant consented to going to the hospital to be viewed by the victim; he insisted he had not stabbed her; just before they left for the hospital, or while on the way, the officer-witness again gave defendant the Miranda warnings by reading from a form, and asked defendant if he wished to sign a statement; defendant declined, so no further questions were asked; after they arrived at the hospital, and before entering the victim's room, the officer-witness again warned defendant of his rights and told him he need not enter the room; defendant expressed a willingness to enter the room, and still insisted he had not stabbed the woman; she promptly identified defendant; the officer-witness, on returning defendant to police headquarters, again warned defendant of his rights and asked if he wished to make a statement; defendant then proceeded to tell of the crime he had committed upon the person of the hospitalized woman; after he had given his statement as to this offense, he was asked if he was wanted elsewhere; and he then told of being wanted for another crime in Michigan, for breaking and entering and escaping custody in Indiana, and for murder in New Mexico.

The record does not show an express agreement to be interviewed or an express waiver of his rights, but, after being advised of his rights and after expressing an awareness and understanding thereof, he proceeded to voluntarily answer questions

and to relate his version of what he had done in New Mexico.

■ Although there is language in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which suggests an in-custody interrogation may properly be conducted only upon an express statement by the accused to the effect that he is willing to make a statement and does not want an attorney, we do not understand the basis for a determination of the voluntariness of an in-custody statement to be so narrowly limited. The ultimate test is that of voluntariness. State v. Armstrong, 82 N. M., 358, 482 P.2d 61, decided March 8, 1971. However, the voluntariness of an act is not to be determined solely upon the presence or absence of an express statement of certain words. This determination must depend in each case upon the particular facts and circumstances surrounding that case. United States v. Hayes, 385 F.2d 375 (4th Cir. 1967), cert. denied, 390 U.S. 1006, 88 S.Ct. 1250, 20 L.Ed.2d 106 (1968). See Annot., 1 A.L.R.3d 1251 (1965).

■ In our opinion the trial court's determination of voluntariness of the statement is clearly supported by the record.

■ The sixth point relied upon for reversal is that "THE JUDGMENT SHOULD BE REVERSED BECAUSE THE DEFENDANT WAS NEVER ARRAIGNED ON THE INDICTMENT." The facts pertinent to a determination of this issue are that on his arrival in New Mexico a copy of the indictment was served upon him and competent attorneys were appointed to represent him; he appeared for trial with his attorneys, and, after the disposal of several motions and other matters in chambers, a jury was impaneled and sworn, and the trial proceeded; defendant and his attorneys participated fully in the trial; and no question was raised by him in the trial court about not having been arraigned until well after the trial was underway. There is no question as to defendant's identity, no question about his understanding the charges against him, and no question but what he was diligently resisting the charges at all stages of the proceedings, as evidenced by the energetic and competently presented defense on his behalf by his counsel. Under these circumstances, he could not have been prejudiced by his failure to plead not guilty, and his right to be arraigned and plead to the charges was waived. State v. Parker, 80 N.M. 551, 458 P.2d 803 (Ct.App.1969).

The next point relied upon for reversal is the claimed error of the trial court in admitting inflammatory evidence of collateral offenses. The claimed collateral offenses were unnatural sexual acts committed upon the victim by force after defendant had committed the robbery, forced the victim into defendant's automobile, and driven into the hills west of Albuquerque. Immediately after the consummation of these claimed collateral offenses, defendant ordered the victim from the automobile, forced him to walk a short distance, remove a portion of his clothing, and lie on the ground, and then proceeded to kick the victim into unconsciousness and to stab him with a pair of scissors, with the apparent intent of killing him.

■ Ordinarily proof of a distinct criminal offense, independent of the offense for which a defendant is being tried, is inadmissible. State v. Mason, 79 N.M. 663, 448 P.2d 175 (Ct.App.1968). There are exceptions to this rule. State v. Bassett, 26 N.M. 476, 194 P. 867 (1921); State v. Lindsey, 81 N.M. 173, 464 P.2d 903 (Ct. App.1969); State v. Mason, supra. However, the sexual acts here committed by defendant were not independent of the offenses for which he was being tried. These acts were part of the environment surrounding and an inseparable part of the whole transaction out of which arose the offenses for which defendant was charged and tried, and these acts were explanatory of the issues involved in, accompanied and were incidental to the charged offenses. They were a part of the res gestae, or the "complete story" as Arizona prefers to call it, and evidence thereof was properly admissible. State v. Villavicencio,

95 Ariz. 199, 388 P.2d 245 (1964); State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877 (1931); Sherrill v. State, 97 Okl.Cr. 154, 260 P.2d 418 (1953); State v. Mason, supra; Ash v. State, 96 Ga.App. 359, 100 S.E.2d 149 (1957); 1 Anderson, Wharton's Criminal Evidence, § 284 (12th Ed. 1955).

■ The next point relied upon for reversal is a claim that the trial court lacked jurisdiction over defendant, because he was assaulted by a Michigan officer and brought to New Mexico illegally. Defendant admits the position he is urging is directly contrary to Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). However, he urges that we disregard the Frisbie case and take a new direction. We are not inclined to do so. Our position on this question was announced in State v. Losolla, 79 N.M. 296, 442 P.2d 786 (1968).

The final point relied upon for reversal is the asserted error of the trial court "* * * IN PERMITTING AN IN-COURT IDENTIFICATION OF DEFENDANT BY THE VICTIM WITHOUT A PRIOR SHOWING THAT SUCH IDENTIFICATION WAS FREE FROM ANY ILLEGAL TAINT." The claim of error arises out of the fact that on July 20, 1967, an Albuquerque Police Officer showed photographs of thirteen different persons to the victim. One of the persons was defendant. The photographs consisted of two views of each person photographed.

Defendant relies upon Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). His claim is: "The witness who makes an in-court identification must show that he is able to make such identification independent of the reinforcement provided through the prior illegal line-up." He recognizes no lineup was involved here, but urges the rationale here should be the same as that behind the protection afforded the defendants in Burgett, Gilbert and Wade.

■ The Burgett case did not involve an identification or lineup question. The other two did. However, even assuming the applicability of the rationale of the Gilbert and Wade cases to the facts here, when the question of the victim's identification of defendant arose, the trial court conducted an evidentiary hearing in the absence of the jury. Counsel for both the State and defendant examined the victim as to the basis of his in-court identification, and an attorney for defendant examined the police officer who had shown the photographs to the victim. Nothing developed in this evidentiary hearing even suggested any taint on the in-court identification by reason of the victim having seen the photographs. Clearly the in-court identification was based upon the observations of defendant by the victim on the night of defendant's attacks upon him, and the trial court's determination of lack of taint by the showing of the photographs was supported by clear and convincing evidence. Nothing more was required. State v. Carrothers, 79 N.M. 347, 443 P.2d 517 (Ct.App. 1968). See also, State v. Turner, 81 N.M. 571, 469 P.2d 720 (Ct.App.1970); State v. Torres, 81 N.M. 521, 469 P.2d 166 (Ct.App. 1970).

It follows from what has been said that the judgment of conviction and the sentence for kidnapping must be reversed, but otherwise the judgment and sentences are affirmed.

It is so ordered.

COMPTON, C. J., and STEPHENSON, J., concur.