500 P.2d 438

STATE of New Mexico, Plaintiff-Appellee,

v.

Tony Frank MASCARENAS, Defendant-Appellant.

No. 887.

Court of Appeals of New Mexico.

July 28, 1972.

154

Robert Dale Morrison, Mitchell, Mitchell & Alley, Taos, for defendant-appellant.

David L. Norvell, Atty. Gen., Victor Moss, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

WOOD, Chief Judge.

 The dispositive issue involves the constitutional right to a speedy trial. N.

M.Const. Art. II, § 14. Whether this right has been denied depends on the reasonableness of the particular delay. Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L. Ed.2d 26 (1970), concurring opinion of Justice Brennan. In judging reasonableness, this court has looked to four factors: length of the delay; the reason for it; prejudice to the defendant; and waiver by the accused of the right. State v. Baca, 82 N.M. 144, 477 P.2d 320 (Ct.App.1970); compare Dickey v. Florida, concurring opinion, supra. We consider each of these factors.

*Length of the delay.*

Defendant was arrested on May 6, 1970, although no criminal complaint was issued until May 20, 1970. Preliminary hearing was not held until October 16, 1970. The criminal information was filed October 26, 1970. He was tried August 19, 1971. Except for a period of approximately four weeks, he was incarcerated in either the Taos County jail or the State Penitentiary from the date of arrest to date of trial, a period of incarceration of approximately 446 days. The delay from arrest until trial exceeds 15 months. The delay from filing of the information until trial is one week short of 10 months.

In State v. Adams, 80 N.M. 426, 457 P. 2d 223 (Ct.App.1969), we held that an interval between arrest and trial of 144 days, without more, did not amount to the denial of the right to a speedy trial. See also State v. Ford, 81 N.M. 556, 469 P.2d 535 (Ct.App.1970). In State v. Crump, 82 N. M. 487, 484 P.2d 329 (1971), a delay of 14 months between indictment and trial did not deny the right to a speedy trial where defendants fled the jurisdiction and was imprisoned in another state. There, defendant's own activities contributed to the delay. These decisions must be considered in relation to § 21-1-1(95), N.M.S.A.1953 (Repl.Vol. 4, Supp.1971) which provides that trial shall commence within six months of the date of filing of the information unless extended by court order. Although this rule is not applicable to this

case, it expresses the policy of the New Mexico Supreme Court as to an acceptable length of delay. See State ex rel. Delgado v. Stanley, 83 N.M. 626, 495 P.2d 1073 (1972).

Here, we have a delay of four months in excess of the policy expressed in § 21–1–1(95), supra, and a 15 month delay between arrest and trial. The 15 month delay is contrary to the purpose of the right to speedy trial because one of the purposes of that right is to prevent undue incarceration prior to trial. State v. Crump, supra.

*The reason for the delay.*

The right to a speedy trial is a relative right consistent with delays. The essential ingredient of this right is orderly expedition of the criminal process. Raburn v. Nash, 78 N.M. 385, 431 P.2d 874 (1967), cert. dismissed, 389 U.S. 999, 88 S. Ct. 582, 19 L.Ed.2d 613 (1967); State v. Adams, supra; see State v. Crump, supra.

Thus, where a defendant causes or contributes to the delay, or consents to the delay, he may not complain of a denial of the right. Raburn v. Nash, supra; State v. McCroskey, 79 N.M. 502, 445 P.2d 105 (Ct.App.1968). The State does not claim that defendant caused, contributed or consented to the delay.

" * * * The accused has no duty to bring on his trial. He is presumed innocent until proved guilty * * *. The government, on the other hand, would seem to have a responsibility to get on with the prosecution, both out of fairness to the accused and to protect the community interests in a speedy trial. * * *" Dickey v. Florida, concurring opinion, supra. The record indicates that the efforts of the District Attorney in this case were to ask the District Judge (not the one who presided at the trial) every two or three months for "a jury to try cases" and to furnish the judge a general list of cases. With this sparse explanation, we cannot say that this case " * * * was moving at a de-

signedly deliberate pace consistent with * * *" the right to a speedy trial. State v. Adams, supra. Specifically, there is nothing showing an orderly expedition of the criminal process.

*Prejudice to defendant.*

Although New Mexico decisions consider the factor of "prejudice to defendant" and infer that the defendant has the burden of demonstrating prejudice, none have expressly placed that burden on the defendant. See State v. Crump, supra; State v. Baca, supra; State v. Adams, supra. If the burden is upon the defendant, this procedure departs from the approach utilized in other situations.

Under standards of due process, unauthorized communications with jurors are presumptively prejudicial and defendant does not have the burden of establishing the existence of prejudice. State v. Gutierrez, 78 N.M. 529, 433 P.2d 508 (Ct. App.1967). Where a prior incriminating statement was inadmissible, a subsequent incriminating statement was presumptively inadmissible and the State had the burden of establishing that the subsequent statement was not the exploitation of the prior statement. State v. Dickson, 82 N.M. 408, 482 P.2d 916 (Ct.App.1971).

Considering the approach in *Gutierrez* and *Dickson,* in relation to the policy disclosed in § 21–1–1(95), supra, in our opinion the delays shown by this record were presumptively prejudicial and the State had the burden of demonstrating an absence of prejudice to defendant by these delays. Compare Dickey v. Florida, concurring opinion, supra.

Even if the defendant did have the burden of demonstrating prejudice, we hold that defendant's showing, which is not contradicted, was sufficient. This showing is the extent of the delays—the 15 month and 10 month intervals previously identified. These delays demonstrate, prima facie, an undue incarceration prior to trial and, thus, establish a prima facie violation

of the right to speedy trial. This prima facie showing of prejudice is not contradicted.

Thus, whether the delay was presumptively prejudicial or whether the delay was a prima facie showing of undue incarceration, prejudice to defendant is not contradicted.

### Waiver by the accused.

Raburn v. Nash, supra, applied the majority rule "* * * that absent extreme circumstances a defendant may not be heard to complain unless he has affirmatively made known his desire for a speedy trial. * * *" This approach was followed in State v. Ford, supra, and State v. Adams, supra. This "demand" requirement is based on the concept of waiver by defendant's inaction, Raburn v. Nash, supra, and has been called "acquiescence" in the delay, see State v. McCroskey, supra.

■ Raburn v. Nash, supra, noted a minority that "* * * hold it is not incumbent upon an accused to take affirmative action or demand trial. * * * It will, however, be noted that most of those states have mandatory statutes requiring dismissal unless the accused is brought to trial within a specified period. * * *" New Mexico now has a mandatory requirement in § 21–1–1(95), supra. See State ex rel. Delgado v. Stanley, supra. Because this case was initiated prior to the effective date of the mandatory requirement, § 21–1–1(95), supra, does not apply. However, the policy expressed in § 21–1–1(95), supra, weakens the rule applied in Raburn v. Nash, supra, and supports the view that six months after the filing of the information, a demand might no longer be required and the concept of waiver might not be applied after the six month period is passed.

The concept of waiver by inaction has been criticized. This criticism is based on the definition of waiver—an intentional abandonment of a known right—and the fact that the concept requires a defendant to take affirmative action to preserve a right accorded him by the Constitution.

See Dickey v. Florida, concurring opinion, supra. Yet, citation of authority is not required to support the fact that the concept of waiver is firmly established in New Mexico by numerous appellate decisions.

■ Accordingly, we do not resolve this factor on the basis of whether the concept of waiver should or should not be utilized. Our approach is to recognize the concept, but also recognize that the "demand" necessary to avoid a waiver is not applicable in "extreme circumstances." Raburn v. Nash, supra. The 15 month delay approaches the extreme in this case when the State offered nothing to explain the delay.

■ In our opinion, we need not decide whether any one of the factors is controlling. We reach our decision by considering all of the factors. Here, there is a showing of delay for which the defendant is not responsible. The State has offered no explanation for the delay. This delay, together with incarceration for all but four weeks of the period of delay, either required the State to show an absence of prejudice, or stood as an unrebutted prima facie showing of prejudice and, unexplained, amounted to an extreme circumstance to which the concept of waiver doesn't apply. From this combination of factors, we hold that defendant was deprived of his constitutional right to a speedy trial.

Defendant provided two or three quarts of beer to minors and was convicted of contributing to the delinquency of a minor. Section 40A–6–3, N.M.S.A.1953 (Repl.Vol. 6). Having been denied his constitutional right to a speedy trial, the conviction is reversed. The cause is remanded with instructions to dismiss the charge.

It is so ordered.

HERNANDEZ, J., concurs.

SUTIN, J., specially concurring.

SUTIN, Judge (specially concurring).

I concur with the result in the majority opinion. We cannot condone the state's

conduct which so delays a defendant's right to a speedy trial that it violates Article II, § 14 of the New Mexico Constitution.

To me, an important point to decide is the constitutionality of the statute under which defendant was convicted.

A. *Section 40A–6–3, N.M.S.A.1953 (Repl. Vol. 6), Contributing to Delinquency Act is Unconstitutional.*

The first claimed error raised by defendant was the constitutionality of § 40A–6–3, N.M.S.A.1953 (Repl.Vol. 6), the contributing delinquency Act. Defendant claims it is invalid because it is so vague, indefinite and uncertain as to be incapable of interpretation and enforcement. I agree.

The statute reads as follows:

Contributing to delinquency of minor. —Contributing to delinquency of minor consists of *any* person committing *any* act, or omitting the performance of *any* duty, which act or omission causes, *or tends to cause or encourage the delinquency* of any person under the age of eighteen [18] years. [Emphasis added].

Defendant was charged with contributing to delinquency "By selling, giving or delivering alcoholic liquor to above minors, Contrary to § 40A–6–3, N.M.S.A.1953, as amended."

This charge was not contrary to § 40A–6–3, supra. It was contrary to § 46–10–12, N.M.S.A.1953 (Repl.Vol. 7, Supp.1971), selling liquor to minors, but defendant was not charged with this criminal offense. A review of New Mexico opinions in criminal cases amply show that defendants are sometimes mischarged. The state ofttimes overlooks clear and unambiguous criminal statutes. For example, see dissenting opinion, State v. Garcia, 83 N.M. 490, 493 P.2d 975 (Ct.App.1971).

A violation of the Contributing to Delinquency Statute is a *fourth degree felony* with a penalty of imprisonment for a term of not less than one year nor more than five years, or to the payment of a fine of not more than $5,000, or to both in the dis-

cretion of the judge. Section 40A–29–3(D), N.M.S.A.1953 (Repl.Vol. 6).

A violation of § 46–10–12, supra, is a *misdemeanor* with a penalty of a fine of no more than $300, or by confinement in jail not more than seven months, or both. Section 46–10–19, N.M.S.A.1953 (Repl.Vol. 7).

I know this is a vain attempt to alert district attorneys to carefully scrutinize applicable statutes.

Section 40A–6–3, supra, was formerly § 13–8–18, N.M.S.A.1953 (Vol. 3). In 1917, it was part of an act defining juvenile delinquents and providing punishment of those who contributed to such delinquency. Laws 1917, ch. 4, § 10. Under the 1917 Act, the district court sat as a juvenile court and exercised jurisdiction. In 1943, the statute was adopted independently of the 1917 juvenile court Act, without any definitions of the words or phrases in the statute. Laws 1943, ch. 36. In 1963, this section was repealed. Laws 1963, ch. 303, § 30–1. It was enacted in similar language without any definitions under the title of "Crimes against Children and Dependents." Laws 1963, ch. 303, Art. 6. This Act is now § 40A–6–3, supra, under which defendant was charged.

A Juvenile Court Act was enacted in 1955. Laws 1955, ch. 205 [§ 13–8–19, et al., N.M.S.A.1953 (Repl.Vol. 3)]. This Act was repealed and a children's code adopted. Laws of 1972, ch. 97 (§ 13–14–1, et al., 1972 Interim Supplement).

In 1949, the Supreme Court held the 1943 Act constitutional. State v. McKinley, 53 N.M. 106, 202 P.2d 964 (1949). Justice McGhee dissented. I agree with Justice McGhee. The majority opinion relied on the definitions in the juvenile code and said:

* * * [A]ny act of commission or omission causing or tending to cause juvenile delinquency *as specifically defined in the act*, to say the least, constitutes the offense. * * * [Emphasis added].

This is plain error. *McKinley* was reaffirmed in State v. Roessler, 58 N.M. 102, 266 P.2d 351 (1954).

The present statute was divorced from the Juvenile Court Act of 1955. When the legislature separated the present statute without reference to the Juvenile Court Act, it intended the present statute to stand on its own two feet.

Nevertheless, this court in State v. Leyba, 80 N.M. 190, 453 P.2d 211 (Ct.App. 1969), said:

> According to defendant the applicable statute is § 13-8-26, N.M.S.A.1953 (Repl. Vol. 3). *We assume these contentions are correct.* See State v. McKinley, 53 N.M. 106, 202 P.2d 964 (1949). [Emphasis added].

In the present case, we do not assume that § 13-8-26 is applicable. A juvenile court proceeding is not a criminal proceeding. It is a special statutory proceeding. In re Santillanes, 47 N.M. 140, 138 P.2d 503 (1943).

There is no reference in § 40A-6-3, supra, to any other statute for definitions of words and phrases. If there were a reference to the Juvenile Court Act, a defendant could not be convicted of contributing to the child's delinquency if the jurisdiction of juvenile court did not attach to the child. Commonwealth v. Stroik, 175 Pa. Super. 10, 102 A.2d 239 (1954). See Commonwealth v. Kempisty, 191 Pa.Super. 602, 159 A.2d 541 (1960).

Without the applicability of § 13-8-26, supra, we do not know what act or omission of a defendant "tends to cause or encourage the delinquency" of a minor. What is meant by "*any* person committing *any* act"? What is meant by a person "omitting the performance of *any* duty"? What is meant by "delinquency"? What is meant by "contributing to delinquency"? Does "*any* person" include parents?

In *Stroik,* the "contributing to delinquency" was a part of the Juvenile Court Act. The court said:

"Contributing to delinquency" is also a broad term involving conduct toward a child in *an unlimited variety of ways* which tends to produce or to encourage or to continue conduct of the child which would amount to delinquent conduct. [Emphasis added].

From "an unlimited variety of ways," can any person, including parents, be prosecuted for tending to cause or encourage the delinquency of a minor who merely grew up in idleness, visited a dram shop, wandered the streets in the nighttime, hooked rides on moving trains, used profane language in public places, or are habitually absent from school, (see In re Santillanes, supra, dissenting opinion), or who became a "hippie," a hitchhiker, an absentee from church or synagogue, an associate of criminals or reputed criminals, or vicious or immoral persons, etc.?

Suppose a person tended to cause or encourage a minor 15 years of age to capture a bullfrog without a valid fishing license, § 53-2-18, N.M.S.A.1953 (Repl.Vol. 8), or to sell a horned toad, § 53-2-16, or to injure a songbird, § 53-2-15, or to sing the national anthem in a public place, § 41-1904, N.M.S.A.1941, or loitering in a poolroom, § 41-1003, N.M.S.A.1941, or a number of the old and new criminal statutes of a similar nature. Can any person, including parents, be prosecuted for tending to cause or encourage the delinquency of a minor?

How vague, indefinite and uncertain can a criminal statute be? Shall each individual criminal charge be left in the hands of any jury called to service?

In State v. Dunn, 53 Or. 304, 99 P. 278, 100 P. 258 (1909), the court said:

> "Delinquency" was unknown to the common law, for which reason we must look exclusively to the statute for the definition of this offense.

Section 40A-6-3, supra, does not give a definition. In State v. Diamond, 27 N.M. 477, 202 P. 988, 20 A.L.R. 1527 (1921), the Supreme Court said:

> Where the statute uses words of no determinative meaning, or the language is

so general and indefinite as to embrace not only acts commonly recognized as reprehensible, but also others which it is unreasonable to presume were intended to be made criminal, it will be declared void for uncertainty. * * *

Geis, Contributing to Delinquency, 8 St. Louis U.L.J. 59, 99 (1963), states:

In essence, contributing statutes represent an abdication of legislative responsibility to analyze and respond to itemized aspects of behavior which are stated to be criminal.

P. 80–81:

The federal government manual discussing juvenile court standards also turns its back on the contributing statute: "It seems sounder," the manual notes, "to define the crime with greater certainty and *to tie it to an act which constitutes a violation of law* or an omission to perform a duty *required by law*. It is felt that the presently existing criminal statutes define a sufficiently broad variety of crimes to serve as an adequate basis to protect children." [Emphasis added].

Section 40A–6–3, supra, is unconstitutional. Hanby v. State, 479 P.2d 486 (Alaska 1970); Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802 (U.S.D.C., M.D.Ala.N.D.1969); State v. Crary, 10 Ohio Ops.2d 36, 80 Ohio L.Abst. 417, 155 N.E.2d 262 (C.P.1959); People v. Owens, 13 Mich.App. 469, 164 N.W.2d 712 (1968), dissenting opinion; State v. Gallegos, 384 P.2d 967 (Wyo.1963); State v. Tritt, 23 Utah 2d 365, 463 P.2d 806 (1970), 36 A.L.R.3rd 1283 (1971), dissenting opinion; Stone v. State, 220 Ind. 165, 41 N.E.2d 609 (1942).

Presently, New Mexico has existing criminal statutes sufficient to serve as an adequate basis to protect children. When children leave the moral and legal pathways in life, the cause of the tragedy can be found generally in the gradual decay of domestic life, divorce, separation of parents, casting children about to become "vagabonds" and "gypies." As a result, New Mexico courts, when concerned with custody of children, have in many cases held that the controlling consideration is the welfare and best interests of the child. Its welfare transcends all other considerations. Kotrola v. Kotrola, 79 N.M. 258, 442 P.2d 570 (1968). "The most important thing a father can do for his children is to love their mother." If fathers did this, parents would not contribute to the delinquency of their children and would prevent other persons from doing it.

The time has come for our legislature and courts to cast aside our statute on "Contributing to Delinquency" and charge parents and other persons with a criminal offense who lead children into a violation of criminal laws.